PEOPLE v BEAMON

Docket No. 77-822. Submitted February 9, 1978, at Detroit.—Decided
    May 8, 1978. Leave to appeal applied for.

Jessie Beamon was charged with first-degree murder. He was
    twice tried on this charge, both trials ending in mistrial. Prior
    to a third trial defendant was sentenced on another offense to a
    term in Federal prison in Indiana. Defendant was transferred
    pursuant to a writ of habeas corpus ad prosequendum to
    Detroit Recorder's Court to stand trial a third time. This trial
    also ended in mistrial, and defendant was returned to the
    Federal prison. Defendant requested of Federal authorities that
    any subsequent request for transfer of him to Detroit Record-
    er's Court for trial be denied because of failure to comply with
    the interstate agreement on detainers act. Another writ of
    habeas corpus ad prosequendum was issued, and defendant was
    returned to Michigan for a fourth trial on the murder charge.
    Defendant moved for dismissal, alleging failure to comply with
    the detainers act. The Recorder's Court of Detroit, George W.
    Crockett, Jr., J., dismissed the information. The people appeal,
    asserting that there was no violation of the detainers act. *Held:*

    1. The provision of the interstate agreement on detainers act
    which guarantees a prisoner a trial on any untried indictment,
    information or complaint which is the subject of a detainer
    lodged against him within 180 days of the prisoner's demand
    for disposition is not invoked by a mere motion for a speedy
    trial.

    2. The detainers act requirement that a defendant must be
    brought to trial means only that a proceeding must be initiated
    within the 180-day period, not that the case be finally disposed
    of.

    3. The defendant was not granted a required 30-day period in
    which to challenge a detainer before being brought to trial.

    4. A letter from the clerk of Recorder's Court to the Federal

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 21 Am Jur 2d, Criminal Law §§ 245, 253, 254.
[3, 4] 21 Am Jur 2d, Criminal Law §§ 249, 250.
[5] 21 Am Jur 2d, Criminal Law § 255.

prison authorities conformed to the definition of a detainer and could therefore be considered a detainer for purposes of the detainers act. A writ of habeas corpus ad prosequendum is a detainer.

5. The information against defendant was properly dismissed because of a mandate of the act requiring dismissal if a prisoner is returned to the place of incarceration without a final disposition of the charges against him, as happened here when the third trial ended in a mistrial.

Affirmed.

1. CRIMINAL LAW—INTERSTATE AGREEMENT ON DETAINERS—DEMAND FOR TRIAL—MOTION FOR SPEEDY TRIAL—STATUTES.

A prisoner may, under the provisions of the interstate agreement on detainers act, demand to be brought to trial within 180 days on any untried indictment, information or complaint which is the basis for a detainer lodged against him; the act explains specifically the actions a defendant must take, however, and a mere motion for speedy trial does not constitute the requisite request to dispose of such detainers (MCL 780.601 *et seq.;* MSA 4.147[1] *et seq.).*

2. CRIMINAL LAW—INTERSTATE AGREEMENT ON DETAINERS—DEMAND FOR TRIAL—STATUTES.

A provision of the interstate agreement on detainers act which states that a defendant must be "brought to trial" within 180 days after he or she sends the required notice and demand for disposition means only that a proceeding must be initiated, not that the case be finally disposed of (MCL 780.601; MSA 4.147[1]).

3. CRIMINAL LAW—INTERSTATE AGREEMENT ON DETAINERS—STATUTES —DISMISSAL OF CHARGES.

The purpose of the interstate agreement on detainers act is to eliminate the shuttling of prisoners back and forth between jurisdictions and to encourage the expeditious and orderly disposition of charges outstanding against prisoners; therefore, a section of the act which provides that if a trial of a prisoner who has been transferred pursuant to a detainer is not had before the prisoner is returned to the original place of imprisonment those charges must be dismissed is satisfied only by a complete trial with some final verdict (MCL 780.601; MSA 4.147[1]).

4. CRIMINAL LAW—DETAINERS—STATUTES—INTERSTATE AGREEMENT ON DETAINERS.

The word "detainer", as used in the interstate agreement on

detainers act, means a notification filed with the institution in which a prisoner is serving a sentence advising that the prisoner is wanted to face pending criminal charges in another jurisdiction; a letter from the clerk of Detroit Recorder's Court to officials of a Federal penitentiary indicating that a prisoner was wanted to face charges in Michigan and advising the penitentiary to contact the court of the judge before whom the prisoner was to be tried, though not a formal document, was sufficient to constitute a detainer (MCL 780.601; MSA 4.147[1]).

5. CRIMINAL LAW—DETAINERS—STATUTES—HABEAS CORPUS AD PROSE-
    QUENDUM.

   A writ of habeas corpus ad prosequendum is a detainer for purposes of the interstate agreement on detainers act (MCL 780.601; MSA 4.147[1]).

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Maura D. Corrigan,* Assistant Prosecuting Attorney, for the people.

*Carl Ziemba,* for defendant on appeal.

Before: M. J. KELLY, P. J., and T. M. BURNS and R. M. MAHER, JJ.

R. M. MAHER, J. Defendant was charged, on May 25, 1973, with first-degree murder. He was tried twice upon this information and both trials ended in a declaration of mistrial by the trial court when the jury could not agree upon a verdict. On August 2, 1974, after the second mistrial, defendant was released on bond of $250. While at large on bail, defendant was convicted in United States District Court of a Federal crime. On April 9, 1975, he was sentenced to a term of 5 years in the Federal prison in Terre Haute, Indiana.

In the meantime, a third trial on the state murder charge was repeatedly delayed until trial was finally set for June 2, 1976. On May 5, 1976,

defendant filed a motion to dismiss for want of prosecution, alleging that he had been denied his right to a speedy trial.

Before the motion was filed, the administrator of the Federal prison in Terre Haute, on May 3, 1976, sent a letter to the clerk of Recorder's Court informing the court of the status of defendant. On May 11, the court clerk responded to the Federal prison, stating that defendant had a June 2, 1976, trial date and referring the Federal authorities to Recorder's Court Judge Elvin Davenport for further information.

On May 24, 1976, a writ of habeas corpus ad prosequendum was issued, signed by Judge Joseph Gillis of Detroit Recorder's Court. The writ directed authorities at the Federal penitentiary in Terre Haute to return defendant to Michigan for a third trial in Recorder's Court on the information charging first-degree murder.

Defendant was released from the Federal prison on June 1 for a June 2 trial date. Defendant's file also includes records from the Federal prison, disclosing that while defendant was released to Michigan authorities June 1 on the basis of the writ, a "detainer" was not placed on defendant until June 3, 1976, two days after he had been sent to Michigan.

Following the transfer of temporary custody, defendant was placed on trial in Detroit Recorder's Court on June 2, 1976. The trial was terminated by the trial court's declaration of a mistrial on June 9, 1976.

On June 17, a new trial date was set for October 6, 1976. The Recorder's Court discharged the writ of habeas corpus ad prosequendum and the Federal authorities then returned defendant to the

custody of the Federal penitentiary at Terre Haute, Indiana.

Some time later, apparently on September 29, 1976, the Michigan authorities again issued a writ of habeas corpus ad prosequendum for the return of the defendant from the Federal penitentiary at Terre Haute to the city of Detroit to stand trial for the fourth time on the information charging defendant with murder of the first degree. The second writ was honored by the Federal authorities and defendant was transported and transferred from the Federal penitentiary to the State of Michigan a second time.

Defendant had, in the intervening time, requested administrative relief from the Federal prison authorities, asking that any subsequent writ from the Michigan officials be denied for failure to comply with the interstate agreement on detainers act. The request was denied and defendant advised to seek relief in the courts or appeal to the Regional Director of the Federal Bureau of Prisons.

After the October 6 trial date was postponed, the defendant filed a motion, on October 29, 1976, to dismiss for loss of jurisdiction, alleging noncompliance with the interstate agreement on detainers act. On December 15, 1976, defendant filed a motion to dismiss, again alleging failure to comply with the detainers act.

A hearing was held on defendant's motion, after which the information was dismissed. The trial judge also stayed the order, pending the prosecutor's appeal of the dismissal. This appeal is brought by the prosecutor from the trial court's dismissal of the first-degree murder information.

The trial court, in its February 3, 1977, ruling, dismissed the information on the grounds that the

180-day rule of Article III(a) of the interstate agreement on detainers act, MCL 780.601 *et seq.;* MSA 4.147(1) *et seq.,* had been violated. The act is a uniform law enacted by 46 states, the District of Columbia, and the Federal government to facilitate the disposition of charges in one jurisdiction when the accused is incarcerated in another jurisdiction.

To prevent abuses and to protect the constitutional right to a speedy trial, the act contains strict guidelines on the manner and time in which the detainer provisions are to be enforced. Article III of the act provides a prisoner with a procedure for bringing about a prompt disposition of detainers placed against a defendant. Article III(a) states:

"(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer* and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his *request for a final disposition to be made of the indictment, information or complaint:* Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner,

and any decisions of the state parole agency relating to the prisoner." (Emphasis supplied.)

The act thus provides that a prisoner can demand to be brought to trial within 180 days on any untried indictment, information or complaint which is the basis for a detainer lodged against him. Article III furnishes a mechanism, capable of being invoked by a prisoner, to insure the constitutional guarantee of a speedy trial.

The trial court in the case at bar erred, however, when it held that a motion for speedy trial, such as defendant made on May 5, 1976, which made no mention of the detainer act, substantially complied with Article III. While the provisions of the act may guarantee a speedy trial, a mere motion for speedy trial does not constitute the requisite request to dispose of detainers lodged against defendant which exceeded the 180-day provision. The act explains specifically in Article III the actions a defendant must take to initiate the procedures in the statute. A speedy trial motion is an inadequate measure with which to invoke the protection of the act.

"The Agreement provides that all charges must be dismissed if a prisoner is not brought to trial within 180 days after he invokes his rights under Article III. Since this provision places an additional burden on the prosecuting authorities, it is fair to insist that the prisoner satisfy the preliminary requirements * * *. In order to insure that all parties concerned have a fair opportunity to protect their rights, the Agreement requires that a prisoner be informed of his rights under the Agreement and that he inform both the prosecuting attorney and the trial court of his whereabouts and his invocation of Article III procedures." *Edmond v Department of Corrections,* 78 Mich App 196, 203; 259 NW2d 423 (1977).

In *Edmond,* the defendant filed a motion for a speedy trial but refused a direct offer to make a request for trial under Article III. While the Court conceded the possibility that something less than perfect compliance might be sufficient in some cases, it held that "the plaintiff did not sufficiently comply with the requirements of Article III * * * to qualify under a substantial compliance standard". 78 Mich App at 203.

In *People v Butcher,* 46 Mich App 40; 207 NW2d 430 (1973), the Court found that for purposes of the act a request for a speedy trial was deficient.

"Defendant next claims that the trial court had no jurisdiction to try the defendant because the proceedings violated the interstate agreement on detainers act, MCLA 780.601; MSA 4.147(1), since he was not tried within 180 days of his request for trial. Assuming the act to be applicable, to hold that defense counsel's alleged request for a speedy trial made in pretrial conference on February 22, 1971, substantially complied with the act would emasculate the act's rather specific notice requirements." 46 Mich App at 44.

Under both *Edmond* and *Butcher,* the trial court in the instant case was wrong in holding that the motion limited to the constitutional right of a speedy trial invoked the running of the 180-day provision.

Were we, nevertheless, to assume that the 180-day period allowed in the act began to run as of the date of the speedy trial motion, there was no violation of the rule. The statute states that a defendant must be "brought to trial" within 180 days after he or she sends the required notice and demand for disposition. A trial was commenced on June 2, 1976, less than one month after the speedy trial motion. Defendant contends that the act re-

quires a full trial, resulting in some verdict, be had by the end of the 180 days. We cannot agree.

The words "brought to trial" mean only that a proceeding must be initiated, not that the case be finally disposed of. A proceeding was commenced within a month of the speedy trial motion. Assuming *arguendo* that the speedy trial motion was sufficient to trigger the 180-day rule of Article III, there was no violation of the rule.

Defendant also alleges a violation of Article IV(a) which provides:

"(a) The appropriate officer of the jurisdiction in which an untried indictment, information or complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party state made available in accordance with Article V(a) hereof upon presentation of a written request for temporary custody or availability to the appropriate authorities of the state in which the prisoner is incarcerated: Provided, That the court having jurisdiction of such indictment, information or complaint shall have duly approved, recorded and transmitted the request: And provided further, That *there shall be a period of 30 days after receipt* by the appropriate authorities before the request be honored, within which period the governor of the sending state may disapprove the request for temporary custody or availability, either upon his own motion or *upon motion of the prisoner.*" (Emphasis supplied.)

The trial court did not rule on the error alleged as to IV(a).

Defendant claims he was not granted the required 30-day period. The records of the Federal prison show that while defendant was released on June 1 apparently on the basis of the May 24 writ the actual detainer was not filed until June 3, two days after defendant's release. If we consider the

writ to be the request for temporary custody, at most six or seven days elapsed from the date of the request to the date of the release honoring that request. Even if, as is discussed *infra,* we consider the May 11 letter from the clerk of Recorder's Court to Federal prison officials in Terre Haute to be the request for temporary custody, defendant was not given the statutorily mandated 30-day period in which to challenge the detainer.

The issue remaining is whether defendant, having been returned to prison following the third mistrial, could, under the statute, be subjected to a second detainer to effectuate the fourth retrial.

Article IV(e) of the act reads:

"If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." ·

The prosecutor first argues that, assuming the writ to procure defendant's presence in Michigan was a detainer, Article IV(e) of the act was not violated since defendant was tried before he was returned. In light of the purposes of the act, we find the prosecutor's contention untenable. The act is designed to eliminate the shuttling of prisoners back and forth between jurisdictions, a practice which disrupts parole and incarceration arrangements and makes the prisoner's status uncertain. The act is intended to encourage the expeditious and orderly disposition of charges outstanding against prisoners and to determine the proper status of any and all detainers based on untried indictments, informations, or complaints.

It is inconsistent with these announced purposes to allow Article IV(e) to be satisfied by something short of a final disposition. A trial without some final verdict is unacceptable. Continual retrials, as in this case, can only produce the shuttling back and forth and the uncertainty of a prisoner's status which the act seeks to avoid. "If trial is not had" must therefore mean a trial which ends in a final verdict, whereby a prisoner can be certain of his status and the status of the charges against him.

In the alternative the prosecution has argued, with support from various Federal circuit courts, that multiple transfers are satisfactory when the mechanism used to gain the transfer is a writ of habeas corpus ad prosequendum. In the instant case, the prosecution claims, defendant's transfer for the third retrial and the fourth retrial was effected not by a detainer, but by writs which, the prosecution claims, are not detainers.

We find two problems with the prosecution's analysis. The first is whether, in fact, the third transfer of defendant on June 1, 1976, was effected by a writ or instead by a detainer letter sent on May 11 by the clerk of the Recorder's Court. That letter was sent in response to a letter from the administrator of the Federal prison in Terre Haute which had informed the clerk of Recorder's Court of defendant's status. In his letter, the clerk of Recorder's Court stated:

"I have received your letter dated May 3, 1976 regarding the above named defendant.

"Please be advised that our computor [sic] whows a Jessie L. Beamon, case #73-03712 arrested for Murder First Degree. Mr. Beamon, if he is the same, has a Trial set for June 2, 1976 before Judge Elvin Davenport.

"Please notify Judge Davenport's Court for further information.

"Thank you in advance for your cooperation."

The word "detainer", as it is used in the agreement, is "a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction". See Senate Report 91-1356, 91st Cong, 2d Sess, 3 US Code Cong & Admin News, p 4865 (1970).

The letter from the clerk of Recorder's Court to the Terre Haute officials, though not as formal as some documents, conforms to this definition of detainer. It advises the officials at the Federal penitentiary that Jessie Beamon is wanted to face a charge of murder in the first degree in the State of Michigan.. It instructs the officials to contact the court of the judge before whom defendant was to be tried for further information. We believe the letter of May 11, 1976, constituted a detainer and was sufficient to act as the means by which defendant's transfer from Indiana to Michigan was effected.

There is a second problem with the prosecutor's alternative argument. Were we to disregard the letter from the clerk of Recorder's Court, we in any event hold that the writ of habeas corpus ad prosequendum is a detainer. We are not unmindful that certain of the Federal courts of appeal disagree with our conclusion. See *Ridgeway v United States*, 558 F2d 357 (CA 6, 1977), *United States v Scallion*, 548 F2d 1168 (CA 5, 1977). But we are likewise aware that other circuits have held a writ of habeas corpus ad prosequendum does constitute a detainer. See *United States v Mauro*, 544 F2d 588 (CA 2, 1976), *United States v*

*Sorrell,* 562 F2d 227 (CA 3, 1977). We must agree with the Second and Third Circuits.

We turn for guidance to the definition of detainer employed when the Interstate Agreement on Detainers Bill was introduced in Congress. Representative Kastenmeier made clear then that a detainer is simply a notice filed with the confining institution that criminal charges from another jurisdiction were outstanding and that the prisoner was wanted in order to stand trial on those charges. 116 Cong Rec 13999 (1970) (remarks of Rep. Kastenmeier).

A writ of habeas corpus ad prosequendum conforms to this definition. The writ is a detainer. Were it not, the section of the law at issue, Article IV(e), permitting only one rendition, would be meaningless. *United States ex rel Esola v Groomes,* 520 F2d 830, 837 (CA 3, 1975). A party to the agreement could simply avoid the requirements of the act by issuing a writ of habeas corpus instead of a detainer.

One of the aims of the agreement, aside from the expeditious disposition of pending charges in another jurisdiction, is elimination of the uncertainties which obstruct programs of prisoner treatment and rehabilitation.

"Sometimes [before the detainer act] the prisoner would automatically be held under maximum security. Sometimes he would be ineligible for special work programs, athletic programs, release for visits to relatives' death beds or funerals, or special minimum security facilities. Often detainers precluded the granting of parole * * * parole boards and prison authorities found it difficult to formulate the prisoner's rehabilitative program, since they were forced to act without knowing whether the prisoner would be convicted on the other pending charges." *United States v Ford,* 550 F2d 732, 737–739 (CA 2, 1977).

A writ of habeas corpus produces the same results as the "detainers" described in *Ford.* We are in accord with the words of the Second Circuit in *United States v Mauro, supra.*

"[T]he Agreement was plainly designed to avoid the shuttling of prisoners back and forth between the penal institutions of the two jurisdictions. The disruptive effect upon the prisoner's morale is the same irrespective of the caption on the paper which produces him in the jurisdiction seeking him for trial." 544 F2d at 593.

Whether a prisoner's transfer is effected by a "detainer" or by a writ of habeas corpus ad prosequendum, the underlying effect, as *Mauro* asserts, is the same on the prisoner. It is contrary to the sense and spirit of the act and incompatible with the congressional purpose in enacting the statute not to deem the writ a detainer.

We conclude that a detainer was lodged against defendant, both by the letter from the clerk of Recorder's Court to officials at the Federal prison in Terre Haute and by the writ of habeas corpus ad prosequendum. After the first detainer was lodged a trial reaching a final verdict was not had before defendant was returned to the original place of imprisonment. Accordingly, under Article IV(e) of the act, the information against defendant was not of any further force or effect and should have been dismissed with prejudice. Defendant should not have been returned to Michigan for a fourth retrial on the same information after he was transferred back to Terre Haute. Though for the wrong reason, the trial judge was correct in dismissing the information.

Affirmed.