PEOPLE v BARNES

Docket No. 78-875. Submitted June 13, 1979, at Lansing.—Decided
    November 6, 1979.

Brian Barnes was convicted, on his plea of guilty, of delivery of
    heroin, Jackson Circuit Court, Russell E. Noble, J. Defendant
    had been incarcerated in a Federal penitentiary a short time
    before the date scheduled for his trial in circuit court, and his
    presence in circuit court was secured by a writ of habeas corpus
    ad prosequendum. He pled guilty, and was returned to the
    Federal penitentiary to await sentencing. Defendant appeals,
    alleging that the failure to lodge him in the county jail during
    the time between the acceptance of his guilty plea and his
    sentencing constituted a violation of the Interstate Agreement
    on Detainers, mandating reversal of his conviction. *Held:*

    The Interstate Agreement on Detainers is violated if a defen-
    dant whose presence has been secured by means of a detainer
    is returned to the original place of imprisonment without trial
    being had. "Trial", for the purposes of the agreement, refers to
    the determination of guilt, and upon acceptance of the defen-
    dant's guilty plea the trial ended. His return to Federal confine-
    ment before sentencing was not a violation of the agreement.

    Affirmed.

    T. M. Burns, J., concurs in the result for the reason that a
    writ of habeas corpus ad prosequendum is not a detainer within
    the meaning of the Interstate Agreement on Detainers.

OPINION OF THE COURT

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — TRIAL
    — STATUTES.

    The word "trial" as used in the Interstate Agreement on Detain-
    ers refers to the determination of a defendant's guilt and the
    trial ends with that determination; therefore, the agreement is
    not violated where a defendant, whose presence in a state court
    for trial was obtained from a Federal prison by writ of habeas

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 250.2.
[2] 21 Am Jur 2d, Criminal Law § 251.1.

corpus ad prosequendum, is returned to the Federal prison after entering a plea of guilty to the state charge but before being sentenced on that charge, where he is returned for sentencing on another writ of habeas corpus ad prosequendum and where sentencing is not delayed but is entered within a reasonable period (MCL 780.601; MSA 4.147[1]).

CONCURRENCE BY T. M. BURNS, J.

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — HABEAS CORPUS AD PROSEQUENDUM — STATUTES.

*A writ of habeas corpus ad prosequendum is not a detainer within the meaning of the Interstate Agreement on Detainers (MCL 780.601; MSA 4.147[1]).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Edward J. Grant,* Prosecuting Attorney, and *John L. Wildeboer,* Assistant Prosecuting Attorney, for the people.

*Rolf E. Berg,* Assistant State Appellate Defender, for defendant on appeal.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

PER CURIAM. Defendant appeals his plea-based conviction of delivery of heroin, MCL 335.341(1)(a); MSA 18.1070(41)(1)(a), on the grounds that between the date of his plea of guilty on October 4, 1977, and the date of sentencing on November 18, 1977, defendant was confined in the Federal prison at Milan, Michigan rather than being incarcerated in the Jackson County jail. Defendant claims that the failure to confine defendant in the county jail constitutes a violation of Article IV(e) of the Interstate Agreement on Detainers (IAD), MCL 780.601;

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

MSA 4.147(1), and mandates reversal of defendant's conviction.[1]

Defendant was simultaneously charged with a Federal offense and the state offense of delivery of heroin. On April 12, 1977, he was arraigned in circuit court on the state charge and on September 8 was notified that his trial was scheduled for October 5, 1977. At the time of his arraignment defendant was confined in the Jackson County jail. On September 29, 1977, defendant was sentenced on the Federal charge to ten years imprisonment at the Federal penitentiary at Milan. He was taken to that institution where he remained confined until October 4, 1977, when he was brought to the Jackson County courthouse by use of a writ of habeas corpus ad prosequendum. On October 4, 1977, he entered a plea of guilty to the state charge and on October 5, 1977, was returned to Federal custody at Milan. On November 8, 1977, he was again brought to Jackson by a writ of habeas corpus ad prosequendum and was sentenced to 7-1/2 to 20 years imprisonment to be served concurrently with his Federal sentence. He was returned to Federal prison later the same day and appeals of right.

Article IV(e) of the Interstate Agreement on Detainers provides:

"If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

---

[1] For a similar case involving the applicability of Article IV(e) of the IAD see *People v Estelle,* 93 Mich App 449; 287 NW2d 262 (1979), released concurrently with the opinion in the instant case.

The statute is applicable only where a detainer is entered, but defendant claims that a writ of habeas corpus ad prosequendum is a detainer within the meaning of the IAD. This Court so held in *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978). Defendant also argues that sentencing procedures are part of the "trial" as that term is used in Article IV(e) of the IAD. *Walker v King,* 448 F Supp 580 (SD NY, 1978). The people contend *Beamon* has been nullified by the Supreme Court's decision in *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978), that a Federal writ of habeas corpus ad prosequendum was not a detainer within the meaning of the IAD and ask that this panel reject *Beamon.*[2] The people further argue that defendant's "trial" was completed when defendant pled guilty and consequently a return to "the original place of imprisonment" before sentencing is not a violation of Article IV(e) of the detainer statute.

We find the people's second argument persuasive. The precise issue was raised and decided in the prosecution's favor in *People v Housewright,* 83 Mich App 346, 348-349; 268 NW2d 401 (1978):

"In Michigan cases, outside of the Interstate Agreement on Detainers, the distinction between trial and sentencing is well established, see *People v Funk,* 321 Mich 617, 621; 33 NW2d 95 (1948), *People v DeVine, supra* [271 Mich 635; 261 NW 101 (1935)], MCL 771.1; MSA 28.1131. Also, the goals behind the Interstate Agreement on Detainers supports this interpretation. The main goal of the agreement is to remove the harmful uncertainties concerning the defendant's release that are caused by the filing of detainers concerning unprosecuted crimes. Although the imposition of a

---

[2] The claim that *Beamon* has been overruled by *Mauro* was made in *People v Estelle, supra,* released concurrently with our opinion in the instant case.

sentence can also create uncertainties as to the prisoner's future, the main concern of the agreement is with the uncertainty which results from unprosecuted charges. * * * The uncertainty caused by the delay in sentencing is minimal when compared with the uncertainty resulting from untried charges. Therefore, we hold that the word 'trial' as used in MCL 780.601; MSA 4.147(1), refers to the determination of defendant's guilt and that the trial ends with that determination."

We recognize that in *Housewright* the defendant, having pled guilty pursuant to a plea bargain, was reasonably certain what sentence would be imposed whereas in the case before us the maximum sentence could be 20 years and defendant was left unsure of the length of time he would be required to remain in prison. However, we believe this distinction is minimal and totally overshadowed by the policy considerations expressed in the *Housewright* opinion. We also note that on the day defendant pled guilty the trial court set a certain date, November 18, for sentencing. There was no adjournment of that date.

We further recognize that *Housewright* is *contra* to the Federal district court's opinion in *Walker v King, supra.*[3] However, we are not bound by a Federal decision and conclude that the sounder reasoning is contained in *Housewright.* We also observe that in *Walker* the state was apparently waiting for defendant to complete his Federal sentence before imposing the state sentence and 18 months had already elapsed between the plea of guilty and the date of the *Walker* decision. In the

[3] "We therefore held that the only interpretation of the Act which is consistent with the Congressional intent and purposes is one which requires a state which has taken custody of a prisoner for purposes of resolving an untried indictment, to sentence that prisoner before returning him to the original place of imprisonment. Thus, Respondents violated the Act when they returned Petitioner to federal prison before sentencing." *Walker, supra,* at 588.

instant case the state moved promptly so that the state sentence could be served concurrently with the Federal sentence.

Finally, we offer an additional argument in support of *Housewright.* The penalty set forth in Article IV(e) for violation of the statute is that "such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice". This language suggests that Congress only intended to include pre-conviction proceedings. Otherwise Congress would have included in the penalty clause language that the conviction or the sentence be vacated. Once a guilty verdict is returned or a guilty plea accepted, the instruments referred to in Article IV(e), ("indictment, information or complaint") are no longer viable functioning documents. Realistically, the conviction discharges the instrument. Thus, we believe Congress intended the "trial" to end when a conviction was entered or a plea was accepted and did not intend to include post-conviction proceedings within the detainer statute.

But even if we are wrong in this conclusion and the statute is found to include sentencing, we conclude that where, as here, sentencing is not delayed but is entered within a reasonable period and defendant is informed of the date of sentencing and that date is adhered to, the intent of the IAD is not violated if, following the plea of guilty, defendant is returned to the original place of imprisonment. To hold otherwise places form over substance.

Affirmed.

T. M. BURNS, J. *(concurring).* Although I originally was of the contrary view, see *People v*

*Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), a writ of habeas corpus ad prosequendum is not a detainer within the meaning of Article IV(e) of the Interstate Agreement on Detainers. *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978). Because the decision of the United States Supreme Court in *Mauro* cannot be distinguished from the instant case, I concur in the result reached by the majority.