PEOPLE v ESTELLE

Docket No. 78-4724. Submitted June 14, 1979, at Lansing.—Decided
    November 6, 1979.

    Defendant, Ronald A. Estelle, was serving time in the Federal
        penitentiary in Atlanta, Georgia, when he first was brought to
        the Federal Holding Facility in Milan, Michigan. Then pursu-
        ant to a writ of habeas corpus *ad prosequendum* he was
        brought to Macomb County jail and before the Macomb Circuit
        Court where he was charged with armed robbery. At circuit
        court defendant was told that the trial judge to whom the case
        was assigned was to undergo surgery and that, unless defen-
        dant chose to stand trial before an alternate judge, trial would
        be delayed at least four weeks. Defendant elected to wait for
        the assigned judge's return and expressed a preference for
        waiting at the Federal Holding Facility instead of the Macomb
        County jail. As a result, defendant was held at the Federal
        facility and the county was charged $16 per day plus meals and
        transportation. Trial was held and defendant was convicted.
        Defendant requested return to the facility pending sentence but
        his request was denied. At sentencing defendant moved to
        dismiss on grounds that, when defendant was returned to the
        Milan facility to await trial, the state lost jurisdiction to try
        him under Article IV(e) of the Interstate Agreement on Detain-
        ers. The court, Raymond R. Cashen, J., denied the motion.
        Defendant appeals. *Held:*

        Under these circumstances, the Interstate Agreement on
        Detainers does not require dismissal. The purpose of Article
        IV(e) of the act is to prevent the disruption of an inmate's
        rehabilitation when a detainer is lodged against him. In this
        case no rehabilitative programs were available either at the
        holding facility or the county jail. Defendant's rehabilitation
        program was not interrupted. Nor was he returned to his
        original place of confinement, Atlanta. Further, since the
        county paid the cost of his confinement, he was not really

returned to the Federal authorities but was merely housed by them until trial.

Affirmed.

T. M. BURNS, J., concurred in the result but would hold that the Interstate Agreement on Detainers does not apply to habeas corpus *ad prosequendum.*

OPINION OF THE COURT

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — STATUTES — FEDERAL CUSTODY.

   Article IV(e) of the Interstate Agreement on Detainers does not require dismissal of an information where, following arraignment but before trial, a defendant who had been brought to Michigan from the Federal penitentiary in Atlanta was returned to Federal custody at the Federal Holding Facility in Milan, Michigan, rather than being confined in the county jail pending trial (MCL 780.601; MSA 4.147).

CONCURRENCE BY T. M. BURNS, J.

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — DETAINERS — HABEAS CORPUS *AD PROSEQUENDUM* — STATUTES.

   *A writ of habeas corpus* ad prosequendum *is not a detainer or a "written request for temporary custody" within the meaning of the Interstate Agreement on Detainers (MCL 780.601; MSA 4.147).*

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *George N. Parris,* Prosecuting Attorney, *Don L. Milbourn,* Chief Appellate Lawyer, and *Robert John Berlin,* Assistant Prosecuting Attorney, for the people.

*Douglas J. M. Voss,* for defendant.

Before: ALLEN, P.J., and T. M. BURNS and D. E. HOLBROOK,* JJ.

ALLEN, P.J. On this question of first impression we are asked to decide whether Article IV(e) of the

---

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

Interstate Agreement on Detainers, MCL 780.601; MSA 4.147(1), requires dismissal with prejudice of the information where, following arraignment but before trial on charges of armed robbery, the defendant, who had been brought to Michigan from the Federal penitentiary in Atlanta, Georgia, was returned to Federal custody at the Federal Holding Facility at Milan, Michigan, rather than being confined in the Macomb County jail pending trial. We answer this question in the negative.

Defendant was charged with armed robbery occurring March 14, 1977, in Macomb County, Michigan. On September 12, 1977, defendant was bound over on the charge but made bond and was released to await arraignment. In October he went to Mississippi to see his wife, but on October 14, 1977, was arrested by Federal authorities in Mississippi for parole violation and was incarcerated at Gulfport, Mississippi. Following a hearing he was transferred to the Federal penitentiary in Atlanta, Georgia. In January 1978 a letter and writ of habeas corpus was delivered by the Macomb County authorities to the Federal marshall for the Eastern District of Michigan and to the warden at the Atlanta penitentiary. Both the letter and the writ directed the Federal authorities to deliver defendant to Macomb County for arraignment on January 25, 1978. Pursuant to said writ defendant was transferred to the Federal penitentiary at Terre Haute, Indiana, and from there to the Federal penitentiary at Milan, Michigan. On February 1, 1978, he was transported to the Macomb County jail.

On February 2, 1978, he was arraigned at the county courthouse on the information and his bond was cancelled. At the arraignment defendant was advised that the trial judge to whom the case

was assigned was to undergo surgery and that, unless defendant chose to stand trial before an alternate judge, trial would be delayed at least four weeks. Defendant elected to await the assigned judge's return. Discussion was then had concerning where defendant would be lodged awaiting trial. Defendant, through counsel, expressed a preference for awaiting trial in the Federal facility at Milan instead of the Macomb County jail. On February 15, 1978, he was transferred back to Milan where he remained until trial on March 16, 1978. During this period the State of Michigan was charged $16 per day, plus meal expenses and costs of transportation.

Trial began March 16th and concluded March 23rd, when the jury returned a verdict of guilty of armed robbery. Again defendant asked that he be returned to Milan to await sentence, but this time the request was denied. On May 2, 1978, defendant was sentenced to prison from six to ten years. At sentencing defense counsel moved to dismiss on grounds that, when defendant was transferred back to Milan to await trial, the State of Michigan lost jurisdiction to try defendant under Article IV(e) of the Interstate Agreement on Detainers (IAD). On May 2, 1978, the trial court denied the motion on grounds that the IAD did not apply to cases where the defendant was returned by writ of habeas corpus. Six days later this Court in *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), held that a writ of habeas corpus *ad prosequendum* was a detainer. Fifteen days later (May 23, 1978) the United States Supreme Court held that a writ of habeas corpus *ad prosequendum* was not a "detainer" or a "written request for temporary custody" within the meaning of the IAD. *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed 2d 329 (1978). Defendant appeals by leave granted.

Viewed in the totality of the circumstances involved we do not find the confinement of defendant at the Holding Facility in Milan a violation of the proscription of Article IV(e) of the IAD. In reaching this conclusion we find it unnecessary to decide whether *Mauro, supra,* overrules this Court's decision in *Beamon, supra.*[1] Article IV(e) reads:

"If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article I of the IAD states that the purpose behind the statute is to prevent the disruption of an inmate's rehabilitation when a detainer is lodged against him. As was stated in *Christian v United States,* 394 A2d 1, 40 (DC App, 1978):

"There is nothing in the legislative history or in the Agreement itself to indicate that its provisions were intended to apply to persons who were not involved in rehabilitative programs. Article IV(e) was designed to avoid the shuttling back and forth between jurisdictions and the resulting disruptive effect such transfers would have on a consistent treatment program and to promote the speedy disposition of outstanding charges upon which the detainers were based."

In the instant case the defendant was not being shuttled back and forth between the county jail

---

[1] Plaintiff is not asking this Court to overrule *Beamon* and in its brief concedes that "in light of this Court's recent decision in *Beamon* a writ of habeas corpus ad prosequendum" invokes the IAD. Therefore, we do not address the question of whether the United States Supreme Court decision in *Mauro* overrules *Beamon.* That question is also raised in *People v Barnes,* 93 Mich App 509; 287 NW2d 282 (1979).

and a Federal prison but was held only for a brief stated period of time awaiting trial. Neither can it be said that his right to an uninterrupted program of rehabilitation was infringed upon. Neither at the Milan Holding Facility or at the Macomb County jail could the defendant participate in a program of rehabilitation, since neither institution offered such programs.

The identical question raised here was decided adversely to defendant in *State ex rel Stanley v Davis,* 569 SW2d 202 (Mo App, 1978). In that case the defendant, who had been sentenced to three years imprisonment and a three-year term of parole, was confined in the Federal institution in Springfield, Missouri. Soon thereafter he was charged in the circuit court of Franklin County, Missouri with assaulting a police officer and a detainer was filed with the Federal authorities. He requested a speedy trial on the state charges and was brought to Franklin County where, on June 21, 1977, he was arraigned and entered a plea of not guilty. Trial was set for July 21, 1977, and the defendant was returned to the Federal institution in Springfield. On July 21, 1977, defendant and his counsel appeared before the Franklin County Court but the case was passed to September 6, and defendant was incarcerated in the county jail. On July 27 counsel moved to dismiss on grounds that when defendant was returned to a Federal institution to await trial. The Court held IAD did not apply:

"We conclude that, based upon the history of the Agreement, the total context of the Act and the purposes embodied therein, Article III(4), § 222.160, RSMo.[2] is not applicable to the situation where a

_____

2 Article III (4), § 222.160, RSMo. is the same as Article IV(e) of the Michigan statute.

federal prisoner in Missouri is transferred to a Missouri court for the limited purposes of arraignment, appearances or hearings and then returned to the Federal facility in Missouri. In short, that section is not applicable to federal-state intrastate transfers for limited purposes. The intent and meaning of the statute must be determined by examining the entire Agreement and not isolated specific sections. The Agreement was meant to be a shield against unconstitutional deprivation of a speedy trial and not as a sword." *State ex rel Stanley v Davis, supra,* 210.

We find *Davis* on point and incorporate its reasoning by reference. In fact, *Davis* is more favorable to defendant's position than the instant case since in *Davis* the defendant had not requested that between arraignment and trial he be confined in the Federal institution.[3]

Further support for our conclusion that Article IV(e) of the statute does not apply to the situation in this case is found in the fact that while incarcerated at Milan the state paid the costs of housing and meals. Under this arrangement the defendant was not really returned to the Federal authorities but in effect was merely housed and boarded at the Federal facility pending trial. Finally, we find that *Beamon, supra,* so strongly relied upon by defendant, is inapposite to the instant case. There the defendant who had been brought to Michigan pursuant to a detainer from a Federal penitentiary in Terre Haute, Indiana, was returned following a mistrial in Michigan to Terre

[3] Numerous cases hold that where defendant requests he be returned to the sending institution or state, defendant waives his rights under the IAD. *Christian v United States, supra,* 35, and cases cited therein. However, some cases hold that for the waiver to be effective it must be shown that there was an intentional relinquishment of a known right. *Enright v United States,* 434 F Supp 1056 (SD NY, 1977). Since the record in the instant case does not show that defendant was told what his rights were under the IAD, we do not base our decision on waiver.

Haute. Article IV(e) uses the term "original place of imprisonment". In *Beamon* the defendant was returned to the original place of imprisonment whereas in the present case defendant originally came from the Federal penitentiary in Atlanta, Georgia.

The remaining claims or error raised by defendant we find less substantive than the question of first impression discussed above. The trial court did not err when it refused to conduct a *Walker*[4] hearing when a witness for the prosecution alluded to a statement made by codefendant Bellamy. A *Walker* hearing pertains to the voluntariness of a confession rather than the *Bruton*[5] question of whether the use of the codefendant's confession prejudiced the defendant. The witness did not divulge the contents of the confession, a cautionary instruction was given by the trial court and the matter was not referred to again. Under these circumstances the cautionary instruction was the appropriate remedy. *People v Skidmore,* 28 Mich App 677, 680; 185 NW2d 137 (1970).

After deliberating two hours the jury returned to the courtroom at 5 p.m. and announced they had not reached a verdict. After discussing the matter briefly with Mr. Egan, the jury foreman, the following occurred:

"*The Court:* I would rather keep you a couple more hours now if you could get a resolution of the matter than to have to send you home for four days.

"*Mr. Egan:* We will give it the old college try.

"*The Court:* Go back in the jury room and we will give you a reasonable time to see what you can do.

[4] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[5] *Bruton v United States,* 391 US 123; 88 S Ct 1620; 20 L Ed 2d 476 (1968).

Everything is still fresh in your minds and I would just as soon see you try again.

*"Mr. Egan:* All right."

Whereupon, at 5:10 p.m. the jury resumed deliberations and at 6:20 p.m. returned with a verdict of guilty. We disagree with defendant that the court's action was coercive. The situation is strikingly similar to the situation in *Zeitz v Mara,* 290 Mich 161, 164; 287 NW 418 (1939), where the Supreme Court held the judge's action noncoercive. The trial judge's instruction is even less demanding than in *People v Coles,* 28 Mich App 300, 304; 184 NW2d 214 (1970). In that case this Court found no error. We find none here.

We find no error in the trial court's instructions to the jury in regard to prior inconsistent statements given at the preliminary examination. The instruction which was given is taken almost word for word from CJI 4:5:01 and is in accord with the holding in *People v Paul Mathis,* 55 Mich App 694; 223 NW2d 310 (1974). Finally, we disagree that the jury was "instructed to find the defendant guilty eleven times of some lesser offense". Instead, the court instructed on the principal offense of armed robbery and the ten lesser included offenses. Such an instruction is in accord with *People v Chamblis,* 395 Mich 408; 236 NW2d 473 (1975), and no objection to the instruction was made by defendant. We find no error.

Affirmed.

D. E. HOLBROOK, J., concurred.

T. M. BURNS, J. *(concurring).* I concur in the result reached by the majority for the reason that I believe our decision here is dictated by *United States v Mauro,* 436 US 340; 98 S Ct 1834; 56 L Ed

2d 329 (1978). Being a member of the majority that decided *People v Beamon,* 83 Mich App 121; 268 NW2d 310 (1978), I have examined it closely and attempted to distinguish it from *Mauro.* However, I am unable to do so and must concede that *Mauro* now controls.