## UNITED STATES

v.

**John EVANS and Marcus Hand, Defendants.**

**No. 76 Cr. 502.**

United States District Court, S. D. New York.

Dec. 3, 1976.

Allen R. Bentley, Asst. U.S. Atty., New York City, Robert B. Fiske, Jr., U.S. Atty., S. D. N. Y., New York City, for plaintiff.

Jerome A. Landau, New York City, for defendant Evans.

Stuart R. Shaw, New York City, for defendant Hand.

MEMORANDUM

FREDERICK van PELT BRYAN, District Judge:

Defendants John Evans and Marcus Hand were charged in indictment 76 Cr. 502 with various offenses committed during their alleged participation in the armed robbery of a Chase Manhattan Bank branch located at 580 Third Avenue, New York, New York, on August 1, 1975. Their first trial, which began on October 5, 1976, resulted in a mistrial when the jury was unable to reach verdicts as to the two counts outstanding against them.[1] A retrial was scheduled for October 26, 1976. On that date, the Government's motion to sever as to defendant Hand because of the unavailability of Hand for trial was granted on consent, and the retrial of Evans began. On October 29, 1976, the jury returned a verdict of guilty against Evans on both remaining counts. A retrial of defendant Hand is presently scheduled to begin on December 15, 1976.

On October 26, 1976, the day Evans' retrial began, both defendants filed a motion to dismiss the indictment. Essentially, the motion raises the question whether the defendants' rights under the Interstate Agreement on Detainers (the Agreement), 18 U.S.C., App., 84 Stat. 1397 (1970), or applicable speedy trial rules have been violated.

A brief chronology will be helpful to an understanding of the issues presented. As previously mentioned, the bank robbery in question occurred on August 1, 1975. An investigation commenced immediately, and eventually turned up several suspects. One Raymond Lawrence Johnson was charged with the August 1, 1975 Chase branch robbery in indictment 75 Cr. 879.[2] On October 6, 1975 Bruce Reavis was indicted as an alleged participant in that robbery in indict-

---

1. Counts charging each defendant with bank robbery by force, violence, and intimidation under 18 U.S.C. § 2113(a), and with use of firearms during the robbery under 18 U.S.C. § 2113(d), were submitted to the jury. A conspiracy count was dismissed by the court with the consent of the Government.

The motion of co-defendant Bruce Reavis for judgment of acquittal was granted by the court at the close of the Government's case.

2. The counts relating to the August 1, 1975 Chase robbery were dismissed with the Government's consent at Johnson's sentencing

ment 75 Cr. 965. Contrary to assertions of counsel for the presently moving defendants at oral argument, neither Evans nor Hand was indicted in 75 Cr. 965, which was eventually superseded by the present indictment, 76 Cr. 502.

By April 1975, the Government's attention had focused on Evans and Hand as possible participants in the Chase robbery. Both men were then being held in custody by the Commonwealth of Pennsylvania, awaiting trial on homicide charges. On April 16, 1976, writs of habeas corpus *ad testificandum*, commanding the presence in this district on April 23, 1976 of Evans, Hand, and two other persons,[3] were issued.

Evans and Hand were produced in this district pursuant to these writs on April 20, 1976. On April 22, 1976, their present counsel were assigned under the Criminal Justice Act. After consultation with counsel, the defendants denied any involvement in or knowledge of the Chase robbery and declined to waive the Fifth Amendment privilege against self-incrimination and testify before the grand jury. On May 7, 1976, they were returned to Pennsylvania without having testified before the grand jury.

On May 24, 1976, after Evans and Hand had been returned to the Pennsylvania authorities, the present indictment, 76 Cr. 502, was filed. It superseded 75 Cr. 965, the Reavis indictment, and charged Evans, Hand, Reavis, and Walls with the August 1, 1975 Chase robbery. The homicide trial of Hand in the Court of Common Pleas, Phila-

delphia County, Pennsylvania, began in early June 1976 and ended on June 19, 1976 with a hung jury. The homicide trial of Evans in the same court began on June 18, 1976 and ended on June 30, 1976 when the jury returned a verdict of guilty. On July 16, 1976, both defendants were convicted of an unrelated bank robbery in the United States District Court for the Eastern District of Pennsylvania.

On July 6, 1976, the Government filed its notice of readiness in the case at bar. In mid-August 1976, writs of habeas corpus *ad prosequendum* were issued to secure the presence of Evans and Hand in this district for trial; they appeared pursuant to the writs on or about September 7, 1976. As previously noted, their first trial in this district began on October 5, 1976, the retrial of Evans began October 26, 1976, and the retrial of Hand has been scheduled to begin on December 15, 1976.

## I

The defendants contend that the indictment against them must be dismissed because the Government violated sections (c) and (e) of Article IV of the Agreement[4] by failing to bring them to trial within 120 days of their appearance in this district on April 20, 1976, and by returning them to Philadelphia on May 7, 1976, without having tried them. This argument must be rejected for several reasons.

■ The appearance of both Evans and Hand in this district on April 20, 1976 was

on his plea of guilty to four other robbery counts contained in the same indictment.

3. One of these men, Otis Babb, was never charged in connection with the August 1, 1975 Chase Manhattan robbery. The other, Richard Walls, Jr., was charged in the present indictment, 76 Cr. 502, and pled guilty before Judge Griesa to count three on September 14, 1976. The writ of habeas corpus *ad testificandum* was satisfied as to Babb, but not as to Walls, in April, 1976.

4. Article IV of the Agreement provides:
(c) In respect of any proceeding made possible by this article, trial shall be commenced within *one hundred and twenty days of the arrival of the prisoner in the receiving State,* but for good cause shown in open court, the

prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

.    .    .    .    .

(e) If trial is not had on any indictment, information, or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information, or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Both the Commonwealth of Pennsylvania and the United States are parties to the Agreement.

compelled by a writ of habeas corpus *ad testificandum.* Although a federal writ of habeas corpus *ad prosequendum,* also issued under 28 U.S.C. § 2241(c)(5), is a "detainer" entitling a state inmate to the protection provided in Article IV of the Agreement, *see United States v. Mauro,* 544 F.2d 588 (2d Cir. 1976),[5] the same cannot be said for the writ *ad testificandum.*

Article IV(a) of the Agreement permits an appropriate officer of a jurisdiction "in which an untried indictment, information, or complaint is pending" to have a "prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State" made available for trial subject to certain conditions not relevant here. The article thus contemplates that a criminal charge be outstanding against a prisoner in the receiving state and that a "detainer" based upon that charge be lodged against the prisoner before its mechanism becomes operative.

The legislative history of the Agreement defines a detainer as

a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction.

S.Rep. No. 1356, 91st Cong., 2d Sess., 3 U.S.Code Cong. & Admin.News pp. 4864, 4865 (1970); 116 Cong.Rec. 13999 (1970). *Mauro* read this definition as encompassing a writ of habeas corpus *ad prosequendum,* which writ in these circumstances presupposes a pending criminal charge. A writ of habeas corpus *ad testificandum,* in contrast, issued to secure the presence of state prisoners to testify before a grand jury or at trial and not to answer any outstanding criminal charges in the receiving district, cannot be characterized as a "detainer"

within the meaning of the Agreement, and the provisions of Article IV on which the defendants rely were not applicable to their appearance in this district on April 20, 1976. *Cf. United States v. Ricketson,* 498 F.2d 367, 373 (7th Cir.), *cert. denied,* 419 U.S. 965, 95 S.Ct. 227, 42 L.Ed.2d 180 (1974).

■ This conclusion is also mandated by the fact that in April, 1976, the defendants were pre-trial detainees in the sending state of Pennsylvania.[6] As previously noted, Article IV of the Agreement establishes an apparatus for securing the presence for trial of a "prisoner . . . serving a term of imprisonment" in any party state. Moreover, the purpose of the Agreement is to insure the speedy and orderly disposition of charges against persons who are serving prison sentences because such charges, wherever pending, "produce uncertainties which obstruct programs of prisoner treatment and rehabilitation." Agreement, Article I. Both the express language and purpose of the Agreement pertain to prisoners who have already been convicted and have entered upon a term of imprisonment, and not to persons held in custody solely to await trial. Thus, the defendants cannot invoke Article IV(c) and (e) in connection with their April 20, 1976 appearance. *See Davidson v. State,* 18 Md.App. 61, 305 A.2d 474 (Md. Ct. of Special Appeals 1973); *Seymour v. State,* 21 Ariz.App. 12, 515 P.2d 39 (Ct.App. Ariz.1973).

■ Since the defendants were produced on April 20, 1976 pursuant to a writ of habeas corpus *ad testificandum* when no charges were pending against them in this district, and while they were pre-trial detainees in the sending state, neither Article IV nor any other provision of the Agreement became operative. If the production of the defendants on September 7, 1976 pursuant to writs of habeas corpus *ad pro-*

---

5. *But see* the dissenting opinion of Judge Mansfield in *Mauro, supra,* at 595.

6. As of December 16, 1975, both Evans and Hand were in Pennsylvania custody as pretrial detainees. Evans was convicted on state charges on June 30, 1976; Hand has never been convicted on state charges. Both men were convicted on federal charges of bank robbery in Philadelphia on July 16, 1976. Thus at their April 20, 1976 appearance, both defendants were pre-trial detainees in the sending state; by the time of their September 7, 1976 appearance in this district apparently only Hand retained that status.

*sequendum* triggered the protections of the Agreement under *Mauro* (*but see* the discussion of their status as pre-trial detainees, *supra*), no violation occurred. Article IV(c) was satisfied because the October 5, 1976 trial began well within 120 days of their appearance pursuant to the writ *ad prosequendum*; Article IV(e) was satisfied because a trial was "had on . . . [the] indictment . . . contemplated hereby prior to the prisoner's being returned to the original place of imprisonment . . . ." [7]

## II

The defendants also contend that the indictment against them must be dismissed because of violation of applicable speedy trial rules. This contention must also be rejected.

Until June 30, 1976, the applicable speedy trial rules were embodied in this district's Interim Plan Pursuant to the Provisions of the Speedy Trial Act of 1974 (the Interim Plan). As of July 1, 1976, the applicable rules are contained in Section III of this district's Plan for Prompt Disposition of Criminal Cases (the Plan), which implements the requirements of the Speedy Trial Act (the Act), 18 U.S.C. §§ 3161–74.

The first prosecutorial action taken against Evans or Hand in the case at bar came with the filing of indictment 76 Cr. 502 on May 24, 1976. Since neither defendant was being "held in custody solely for the purpose of trial" under Rule 3(a)(1), the Interim Plan only obligated the Government under Rule 5 to be ready for trial within six months of the filing of the indictment. The Government's filing of its notice of readiness on July 6, 1976 would have met this requirement.

On July 1, 1976, however, Section III of the Plan went into effect, superseding the Interim Plan. It maintained the six-month trial readiness rule in Rule 7, which the Government satisfied with the July 6, 1976 notice of readiness. In addition, Section III of the Plan set forth time limits within which an indictment or information must be filed, an arraignment must be held, and trial must commence. *See* Rules 3, 4, and 5.

The indictment here was filed within the time limits prescribed by Rule 3 of the Plan. At the October 26, 1976 retrial of Evans, however, the court discovered that neither Evans nor Hand had been formally arraigned on the charges against them in accordance with Rule 4 of Section III of the Plan and Fed.R.Crim.P. 10.[8] The earliest that an arraignment was required by Rule 4 in this case was within 10 days of July 1, 1976, *see* Rule 4(a)(4), and probably it was not required until 10 days after the defendants' September 16, 1976 appearance before Judge Griesa, *see* Rule 4(a)(3). Using either date as the starting point for calculating the 180-day period during which the trial of defendants not held in custody solely for the purpose of trial on a federal charge must commence, the time limit prescribed by Rule 5 was met by the initial trial on October 5, 1976. The retrial of Defendant Evans was within the 60-day period after declaration of mistrial as prescribed by Rule 5(b), and a December 15, 1976 retrial of Hand would also be within this period, once the delay resulting from his retrial in the Pennsylvania courts on the Philadelphia homicide charge is excluded from the computation under 18 U.S.C. § 3161(h)(1)(C).

What we have, then, is a technical failure to arraign the defendants formally on the

---

7. The court thus views the initial trial of Hand at which the jury disagreed as fulfilling the requirements of Article IV(e). The policies set forth in Article I of the Agreement would not be furthered by reading Article IV(e) as requiring the receiving state to retain custody of the defendant after a mistrial until he could be retried, at least when he was still merely a pre-trial detainee in the sending state and already scheduled to be retried after an earlier mistrial there. Accordingly, I see nothing in

the Agreement, assuming for the moment that it can be invoked by one held as a pretrial detainee in the sending state, that bars the production of Hand pursuant to a writ of habeas corpus *ad prosequendum* for his December 15, 1976 retrial in this district.

8. Evans was given an opportunity to plead to the indictment as soon as this was discovered, and he pled not guilty. Hand has still not been arraigned.

charges against them within the prescribed time limits. Defendants have pointed to no prejudice resulting from failure to arraign them sooner and I can conceive of none. Their counsel had ample opportunity to consult with them on the case and did so. Discussions of the case at pre-trial conferences were based on the premise that there had been pleas of not guilty. Failure to arraign the defendants sooner and take their pleas does not mandate dismissal of the indictment under Section III of the Plan, *see* Rule 11(e).[9] While the court retains the power to dismiss the case for unnecessary delay under Federal Rules of Criminal Procedure 48(b), here there was no unnecessary delay in indicting the defendants or bringing them to trial nor any prejudice resulting from failure to arraign them sooner. Under these circumstances, dismissal of the indictment is not warranted. *See United States v. Rogers,* 469 F.2d 1317 (5th Cir. 1972).

For the above reasons, the motion of defendants Evans and Hand to dismiss the indictment is in all respects denied.

IT IS SO ORDERED.

---

**9.** It may be noted that while 18 U.S.C. § 3161(c) sets forth separate time limits within which an arraignment and a trial must be held, 18 U.S.C. § 3162(a)(2), when it takes effect, will impose sanctions only for failure to bring the defendant to *trial* within the appropriate period.