James WILKETT, Sr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–85–723.

Court of Criminal Appeals of Oklahoma.

April 6, 1988.

Gene Stipe, Stipe, Gossett, Stipe, Harper, Estes, McCune and Parks, Oklahoma City, for appellant.

Michael C. Turpen, Atty. Gen., Jean M. LeBlanc, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, James Wilkett, Sr., was tried by jury and convicted of Murder in the Second Degree (21 O.S.1981, § 701.8) in the District Court of Haskell County, Case No. CRF–80–77, before the Honorable George McBee, District Judge. The jury set punishment at ten (10) years imprisonment. From this judgment and sentence, the appellant has perfected this appeal.

On the afternoon of September 13, 1980, the appellant entered Bunk's Bar in McCurtain, Oklahoma. Apparently, he was involved in an argument, became very angry, and left the bar. Shortly thereafter, appellant returned to the bar. His wife followed him, asking him to return home. The testimony was conflicting as to the next sequence of events. Appellant claims that Bell, the deceased, grabbed his wife. Appellant kicked Bell and noticed that two men, with whom appellant had argued earlier, were picking up chairs. Appellant pulled a gun from his pocket, intending to bluff his way out of the bar. He testified that he did not know the gun was loaded. While attempting to exit the bar, Bell hit the gun and it discharged.

The State's theory is that the appellant was slapping and hitting his wife. Bell approached the appellant and asked him to quit "fighting with the lady." The appellant pulled a gun and said, "When I shoot them, they don't get up." He then shot Bell, and handed the gun to the owner of the bar.

Appellant was first convicted for the crime in 1981. This Court, after review of his appeal, reversed the conviction, remanding for a new trial. *See Wilkett v. State,* 674 P.2d 573 (Okla.Crim.App.1984). On September 19, 1984, the State requested custody of the appellant in order that he could again stand trial. At the time of the request, appellant was in the custody of the federal authorities, incarcerated on a federal conviction. Appellant was released into the custody of the State on September 21, 1984. A mistrial was declared and appellant was returned to the federal penitentiary. After setting another trial date, the State asked for custody on January 16, 1985. Appellant was again released to the State authorities to stand trial. Another mistrial was declared on January 31, 1985 and he was returned to the federal authorities. On April 26, 1985, the State filed another request for custody. He was released into their custody. This trial resulted in a conviction, from which this appeal was perfected.

As appellant's first assignment of error, he urges several violations of the Interstate Agreement on Detainers Act (IAD),

22 O.S.1981, §§ 1345–1349, require reversal. Initially, he asserts that dismissal is required due to a violation of Article IV(a), which reads in pertinent part:

> ... [P]rovided further, that there shall be a period of thirty (30) days after receipt by the appropriate authorities before the request be honored, within which period the Governor of the sending state may disapprove the request of temporary custody or availability, either upon his own motion or upon motion of the prisoner.

Because he was not allowed a thirty (30) day waiting period before his transfer to State authorities, appellant argues that he was deprived of a pre-transfer hearing. Clearly, he was not afforded the thirty (30) day waiting period before any of the transfers from federal custody to state custody. The issue then becomes whether he was denied a pre-transfer hearing by this violation.

■ Appellant was not entitled, as a matter of right, to a pre-transfer hearing. *See Cuyler v. Adams,* 449 U.S. 433, 101 S.Ct. 703, 66 L.Ed.2d 641 (1981). In *Cuyler,* the United States Supreme Court held that a prisoner transferred under the IAD cannot be forced to forfeit a pre-existing right to a pre-transfer hearing. There, the prisoner was incarcerated in a state which had adopted the Uniform Criminal Extradition Act, and under this Act, was entitled to a pre-transfer hearing. Because the prisoner was entitled to a pre-transfer hearing as a matter of right under the Uniform Criminal Extradition Act, he could not be deprived of that right through the use of the IAD. However, in the present situation, the "sending state" was not actually a state, but instead was the United States, in whose custody the appellant was incarcerated. Because the United States is not a party to the Uniform Criminal Extradition Act, the appellant was not entitled to the rights afforded prisoners under that Act. Accordingly, appellant was not entitled to a pre-transfer hearing as a matter of right.

■ While the IAD specifies that a thirty (30) day waiting period shall be afforded to a prisoner-defendant, it does not enunciate a sanction for failure to allow the waiting period. Because the purpose of this section is to protect the due process rights of the prisoner, and not to sanction the State, dismissal is not required as long as the appellant was afforded an opportunity to exercise his due process rights. Appellant was not prevented from exercising his administrative remedies or the remedies available to him through the judicial system. Accordingly, this contention is meritless.

■ Appellant also urges that the 120–day time limitation of Article IV(c) was violated by failure to achieve a final verdict within the specified time. *See* 22 O.S.1981, § 1347. Although appellant acknowledges that each time he was brought to trial, such trial was held within one (1) month of the State's obtaining custody, he argues that a final verdict was required within the 120 days. Because two mistrials occurred before a conviction was obtained, he concludes that the State failed to meet the time limitation of Article IV(c). *Id.*

Article IV, paragraph (c) reads as follows:

> (c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

We agree that a failure to bring the appellant to trial within 120 days of arrival into the State's custody requires dismissal with prejudice. *Bell v. State ex rel. Lane,* 714 P.2d 205, 206 (Okla.Crim.App.1986). But in this case, each time a trial was had, it was commenced within the required time. The statute makes no mention of a "final verdict"; instead, the limitaion deals only with the commencement of trial. As each of appellant's trials were commenced well within 120 days of the State gaining custody, this assignment is also without merit.

■ Appellant further argues that dismissal is required because he was returned

to federal custody after each mistrial. He alleges that this was a violation of Article IV(e) which states:

> (e) if trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to Article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

Admittedly, appellant was returned to federal custody after each mistrial. Again, this section does not require a "final verdict", but simply orders that trial be had before returning the prisoner to his original place of custody. While we are aware of contrary authority, *People v. Beamon*, 83 Mich.App. 121, 268 N.W.2d 310 (Mich.Ct. App.1978), this Court believes that the better rule regarding Article IV(e) was set forth in *United States v. Evans*, 423 F.Supp. 528 (S.D.N.Y.1976). In *Evans*, the defendant was returned to the place of original custody after a mistrial. The court held that such was not a violation of the IAD, as the IAD only required that a trial be had. Similarly, appellant was returned to federal custody only after trial was had. Accordingly, there was no violation of Article IV(e).

■ Appellant next asserts that the trial court erred in failing to quash the jury panel because the ballot box was not tumbled after each name was drawn in accordance with 22 O.S.1981, § 595. We find *Helfrich v. State*, 640 P.2d 1367, 1369 (Okla.Crim.App.1982) to be determinative of this issue. In that case, the court clerk tumbled the ballot box before the names were drawn. This Court held there was substantial compliance with the statute. Similarly, in appellant's case, the clerk tumbled the ballot box before selecting the jury panel. Because the clerk substantially complied with 22 O.S.1981, § 595, this assignment of error is without merit.

As his next proposition, appellant contends that the trial court erred in refusing to dismiss prospective juror Lashley for cause. During voir dire, Lashley admitted having spoken with the nephew of a witness about the sequence of events at Bunk's Bar. After extensive questioning, defense counsel asked that Lashley be removed for cause. The trial judge then conducted a thorough examination and determined that Lashley had formed no opinion as to the guilt or innocence of appellant. Most importantly, we note that Lashley was removed form the jury panel with a peremptory challenge.

■ While appellant is entitled to a jury composed of persons who are willing to accord him the presumption of innocence, he is not entitled to one completely ignorant of the facts. *Andrews v. State*, 555 P.2d 1079, 1082 (Okla.Crim.App.1976). Further, a juror is not disqualified because he has formed an opinion as a result of general conversation. *Id.* at 1082. If, as in Lashley's situation, the juror expresses a willingness to lay aside those impressions and render a verdict based solely on the evidence, 22 O.S.1981, § 662 does not require disqualification. *See Wooldridge v. State*, 659 P.2d 943, 946 (Okla.Crim.App. 1983). Accordingly, the trial court did not abuse its discretion in refusing to dismiss Lashley for cause. *See Grizzle v. State*, 559 P.2d 474, 480 (Okla.Crim.App.1977).

■ Appellant urges in his fourth assignment that reversible error occurred when a witness was allowed to testify regarding her perception of the deceased's motive for approaching the appellant in Bunk's Bar. He argues that a witness cannot interpret the conduct of another. However, under 12 O.S.1981, § 2701, a lay witness may testify in the form of an opinion provided as the testimony is based on his personal knowledge or perception and is helpful to the determination of a factual issue.

■ The testimony in question was given by an eyewitness at the scene of the shooting. When asked why the deceased approached the appellant, the witness replied the deceased was attempting to stop appellant from hitting and slapping appellant's wife. Clearly, she was testifying about the events she witnessed which led up to the shooting. This testimony was

based on her perception of an occurrence she witnessed and was helpful in explaining the sequence of events. No error occurred in allowing this testimony. *See Green v. State*, 713 P.2d 1032, 1039 (Okla. Crim.App.1985), *cert. denied,* — U.S. ——, 107 S.Ct. 241, 93 L.Ed.2d 165 (1986).

 Finally, appellant asserts that it was improper for the trial court to deny a change of venue. Appellant claims that he did not receive a fair trial in Haskell County due to pretrial publicity and prejudice. However, appellant has failed to show any prejudice existed against him at the time of the trial which resulted in his conviction. He also failed to show that notoriety received due to newspaper articles precluded him from receiving a fair trial. In fact, the opposite result is apparent from the record. An extensive voir dire, which covers 461 pages of the transcript, reveals exhaustive questioning of each prospective juror regarding bias. As we held in *Thomsen v. State*, 582 P.2d 829, 832–835 (Okla.Crim. App.1978), mere publicity does not, by itself, establish that a defendant cannot receive a fair trial. If each juror, as in this case, indicated honestly that he will put aside any opinion based on information obtained outside of court, and render judgment based on the evidence presented, the jury process has been sufficiently safeguarded. *See Walker v. State*, 723 P.2d 273, 278 (Okla.Crim.App.1986), *cert. denied,* — U.S. ——, 107 S.Ct. 599, 93 L.Ed. 2d 600 (1986). The last assignment of error is meritless.

Accordingly, the judgment and sentence is AFFIRMED.

BRETT, P.J., and BUSSEY, J., concur.