**Curtis Edward McCARTY, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–86–343.**

Court of Criminal Appeals of Oklahoma.

Nov. 23, 1988.

As Corrected Dec. 30, 1988.

Rehearing Denied Dec. 30, 1988.

David Autry, Asst. Appellate Public Defender, Norman, for appellant.

Michael C. Turpen, Atty. Gen., Sandra D. Howard, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

PARKS, Judge:

The appellant, Curtis Edward McCarty, was tried by jury and convicted of First Degree Malice Aforethought Murder (21

O.S.Supp.1982, § 701.7(A), in Oklahoma County District Court, Case No. CRF–85–2637, before the Honorable William R. Saied, District Judge. The jury found three aggravating circumstances and sentenced appellant to death.

This case involved the stabbing and strangulation death of eighteen-year-old Pam Willis in a residence in Southwest Oklahoma City sometime during the early morning hours of December 10, 1982. The trial was conducted almost three and one-half (3½) years later, on March 17–26, 1986. Appellant was convicted primarily on the basis of circumstantial evidence, and statements he made to police and third parties. A complete statement of facts is unnecessary, however, because the record is replete with error requiring that the appellant's conviction be reversed and remanded for a new trial.

### I.

■ We first address the various issues surrounding the testimony of Joyce Gilchrist, a police forensic chemist, who testified for the prosecution at trial. Appellant asserts that the State's tardiness in disclosing the hair evidence and forensic report resulted in the defense expert being unable to adequately examine the physical evidence. We agree. The record reflects that Ms. Gilchrist began her forensic examination on December 15, 1982. She obtained additional scalp hairs from appellant on January 16, 1986. Defense counsel filed a motion for discovery and inspection on January 21, 1986, requesting all scientific and technical reports, and hair, fiber, fingerprint, and serology samples for independent evaluation by an expert to be named later. (O.R. 150) On Monday, March 10, 1986, defense counsel named John Wilson as defense expert. (O.R. 185) Ms. Gilchrist mailed the hair slides to the defense expert, John Wilson, Chief Forensic Chemist at the Regional Crime Laboratory in Kansas City, Missouri, on Friday, March 14, 1986. Mr. Wilson received the slides and forensic report at mid-day on March 17, 1986, the day the trial began. As requested, the slides were mailed back to Gilchrist on March 18, 1986.

While we do not condone defense counsel's delay in not naming an independent expert until Monday, March 10, 1986, we find that Ms. Gilchrist's delay and neglect in not completing her forensic examination and report until Friday, March 14, 1986, for a trial which was scheduled for and began on Monday, March 17, 1986, was inexcusable, since she began her forensic examination in December of 1982. Moreover, the State was given notice on January 21, 1986, that appellant had requested samples of physical evidence to be provided to an independent expert. (O.R. 150) Clearly, appellant was deprived of a fair and adequate opportunity to have critical hair evidence examined by an independent forensic expert. The procrastination of both the State and the defense, while equally deplorable, cannot justify ignoring due process notions of fundamental fairness guaranteed by the Fourteenth Amendment and Article II, Section 20 of the Oklahoma Constitution. While appellant was not entitled to a perfect trial, he was entitled to a fair one. *See Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968); *Jones v. State*, 610 P.2d 818, 820 (Okla. Crim.App.1980). An accused is entitled to pretrial examination of physical evidence and technical reports. *See Stafford v. State*, 595 P.2d 797, 799 (Okla.Crim.App. 1979); *Wing v. State*, 490 P.2d 1376, 1382 (Okla.Crim.App.1971); *Layman v. State*, 355 P.2d 444, 445 (Okla.Crim.App.1960). The foregoing right would be rendered meaningless unless an accused is afforded a fair and adequate opportunity to make a competent independent pretrial examination. *See Moore v. State*, 740 P.2d 731, 735 (Okla.Crim.App.1987).

Ironically, the State not only used the tardiness of its disclosure to deny a defense expert a fair and adequate opportunity to conduct a competent independent examination, but also took advantage of its own tardiness to discredit whatever examination was made by the defense expert. Ms. Gilchrist testified that Mr. Wilson could not have made a competent forensic examination in the length of time he had

the hair slides. (Tr. VI, 174–75) Furthermore, the forensic report was at best incomplete, and at worst inaccurate and misleading. Mr. Wilson testified that Gilchrist's forensic report reflected that none of the pubic hairs found on the victim were consistent with appellant. (Tr. VIII, 22) Ms. Gilchrist admitted at trial, however, that she failed to include her conclusion that a pubic hair found on the victim was consistent with appellant's pubic hair in the forensic report given to Mr. Wilson. (Tr. VI, 156–58, 211–12) This significant omission, whether intentional or inadvertent, resulted in a trial by ambush, as defense counsel was deprived of an accurate forensic report, which is essential to intelligent cross-examination. *See Layman*, 355 P.2d at 450–51.

■ Next, in response to Assistant District Attorney Barry Albert's question based on her expertise and examination of the forensic evidence as to whether Ms. Gilchrist had "an opinion as to whether Mr. McCarty was physically present during the time violence was done to Miss Willis," Gilchrist replied "he [McCarty] was in fact there." (Tr. VI, 176–77) We find that the admission of this opinion testimony was error, because Ms. Gilchrist did not, and could not, testify that such opinion was based on facts or data "of a type reasonably relied upon by experts in the particular field" in forming such an opinion. *See* 12 O.S.1981, § 2703. Ms. Gilchrist herself testified that forensic science techniques had not advanced to the point where a person could be positively identified through blood types, secretor status, or hair examination. (Tr. VII, 159) We find it inconceivable why Ms. Gilchrist would give such an improper opinion, which she admitted she was not qualified to give. While defense counsel attempted to demonstrate the impropriety of Gilchrist's opinion through the testimony of John Wilson, we cannot say this was sufficient to overcome the devastating impact of improper identification testimony by a police forensic expert. "[W]ithin the context of a criminal trial, '[s]cientific or expert testimony particularly [invites] the ... danger [of unfair prejudice, of confusing the issues, or mis-

leading the jury] because of its aura of special reliability and trustworthiness.'" *United States v. Green*, 548 F.2d 1261, 1268 (6th Cir.1977) (quoting *United States v. Amaral*, 488 F.2d 1148, 1152 (9th Cir. 1973)).

■ Appellant argues that Ms. Gilchrist's opinion amounted to an expression of the appellant's guilt, because she "in effect told the jury that Mr. McCarty had murdered Pamela Willis." *Supp. Br. of Appellant*, at 4. "Testimony in the form of an opinion ... *otherwise admissible* is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." 12 O.S.1981, § 2704 (emphasis added). The "otherwise admissible" language means that Section 2704 must be read together with Sections 2701–2703 and 2403 of the Oklahoma Evidence Code. 1 L. Whinery, *Guide to the Oklahoma Evidence Code* 247 (1985). The so-called "ultimate issue" rule which prohibited expressions of expert opinions on ultimate issues was intended to be abolished by Section 2704. *Id.* at 254 (evidence subcommittee note). It has been recognized, however, that in spite of this rule of evidence, "[a]n opinion as to the defendant's guilt is an improper lay or expert opinion because the determination of the defendant's guilt or innocence is solely a question for the trier of fact." *State v. Carlin*, 40 Wash.App. 698, 700 P.2d 323, 325 (1985) (citations omitted). Similarly, reversible error has been found where expert witnesses testified in effect that the testimony of two complaining witnesses in a child molestation case could be believed. *United States v. Binder*, 769 F.2d 595, 602 (9th Cir.1985). Bolstering the credibility of complaining witnesses through expert testimony usurps the jury's fact-finding function, because it is the sole responsibility of the jurors to assess the credibility of witnesses in light of their own experience, and no expert assistance is necessary. *Id.* Expert testimony should not be permitted if it invades the province of the trier of fact. *United States v. Amaral*, 488 F.2d 1148, 1153 (9th Cir.1973).

Whether or not Ms. Gilchrist's opinion constituted an improper personal expres-

sion of the appellant's guilt, her opinion that appellant was in fact present when violence was done to the victim was an improper expert opinion, because it was beyond the present state of the art of forensic science, and certainly beyond Gilchrist's personal knowledge, as testified to by both Ms. Gilchrist and Mr. Wilson. Our conclusion is buttressed by the fact that on December 14, 1987, Max Courtney, President of the Southwestern Association of Forensic Scientists, Inc., issued a prepared statement of the Board of Directors concerning allegations of professional misconduct lodged against Ms. Gilchrist. A certified copy of this statement, which was filed with this Court on January 4, 1988, concluded that Ms. Gilchrist had violated the ethical code, but interestingly she was not disciplined. That statement reads in relevant part: "Our Professional Conduct Committee thoroughly investigated the allegations against Ms. Joyce Gilchrist and ... communicated with [her] that she should distinguish personal opinion from opinions based upon facts derived from scientific evaluation ... We further conclude that, in our system of jurisprudence, undue pressure can be placed upon the forensic scientist to offer personal opinions beyond the scope of scientific capabilities." (Supp. Ex.) On the basis of the foregoing, we hold that such personal opinions beyond the scope of scientific capabilities have no place in a criminal trial, and are inadmissible under 12 O.S.1981, § 2703. Moreover, because Gilchrist's so-called expert opinion was actually a personal opinion beyond the scope of present scientific capabilities, it should have been excluded by the trial judge because its probative value was substantially outweighed by the dangers of unfair prejudice and misleading the jury under 12 O.S.1981, § 2403.

Finally, appellant urges in his supplemental brief that the prosecution knowingly used misleading scientific testimony by Ms. Gilchrist to secure his conviction. In support of this assertion, appellant relies on statements attributed to District Attorney Robert Macy and Assistant District Attorney Barry Albert in an article published in the *Tulsa Tribune* on October 21, 1987.[1] The knowing use of false or misleading evidence important to the prosecution's case in chief violates the due process clause of the Fourteenth Amendment. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 647, 94 S.Ct. 1868, 1873, 40 L.Ed.2d 431 (1974); *Miller v. Pate*, 386 U.S. 1, 7, 87 S.Ct. 785, 788, 17 L.Ed.2d 690 (1967); *Brown v. Wainwright*, 785 F.2d 1457, 1463–64 (11th Cir.1986). We will not hesitate to reverse a conviction where an appellant establishes that (1) certain testimony was in fact misleading, (2) the prosecution knowingly used said testimony, and (3) the testimony was material to guilt or innocence. *See Brown*, 785 F.2d at 1463; *Troedel v. Wainwright*, 667 F.Supp. 1456, 1458 (S.D.Fla.1986). Although we are greatly disturbed by the implications that the Oklahoma County District Attorney's Office may have placed undue pressure upon Ms. Gilchrist to give a so-called expert opinion, which was beyond scientific capabilities, we cannot conclude on the record before us that appellant has established the prosecution's knowing use of false or misleading evidence.

## II.

In appellant's seventh assignment of error, he claims that the trial court erred in allowing Ms. Gilchrist to testify that a scalp hair consistent with appellant was

---

1. According to writer Joan Biskupic, Oklahoma County District Attorney Robert Macy stated "he wants lab workers, based on their scientific findings, to give opinions if they believe the person accused of the crime 'was actually in fact there and in contact' with the victim. 'An expert who won't give you an opinion is not a whole lot of value to you ... if he's not willing to say, 'After examining all of the evidence, in my opinion, these hairs came from this man,' or 'Yes, this man was present.'" *Tulsa Tribune*, at 4A (October 21, 1987). Oklahoma County Assistant District Attorney Barry Albert, who ironically elicited the improper personal opinion of Joyce Gilchrist in the instant case, stated in a separate interview that "I would think that any chemist who would try to say 'this man is the man who was there' would be out of line, because the state of the art is not sufficient to make that kind of identification." *Id.* The foregoing comments were made approximately nineteen (19) months after appellant's trial.

found in one of the victim's chest wounds, in which a knife was imbedded. We agree. "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter." 12 O.S.1981, § 2602. No evidence was introduced that Ms. Gilchrist had personal knowledge of this matter or that such information was contained in the medical examiner's report. When defense counsel voir dired Ms. Gilchrist, she admitted that she was not present at the autopsy when the scalp hair was collected. (Tr. VI, 146) The medical examiner who performed the autopsy did not testify at trial. For these reasons, the trial court erred in allowing this testimony over defense counsel's timely objection. Error also occurred when Ms. Gilchrist was allowed to speculate on the possible procedures used by the medical examiner to explain why the test Gilchrist performed on a rectal swab from the victim tested positive for the presence of spermatoza, while the medical examiner's autopsy report stated that an anal smear tested negative for spermatoza. Again, the State failed to lay a predicate of personal knowledge as required under Section 2602 of the Oklahoma Evidence Code.

## III.

In his eighth assignment of error, appellant argues, and we agree, that the trial court erred in allowing Police Officer Ron Worthum to testify concerning an extrajudicial experiment he conducted to show that appellant's white Volkswagen would have appeared to be blue at night under street lights. The State failed to satisfy its burden of showing that the conditions of the experiment were sufficiently similar to provide a fair comparison. *See Jackson v. Fletcher,* 647 F.2d 1020, 1027 (10th Cir.1980). *See generally McCormick on Evidence* 599–604 (E.Cleary 3d ed. 1984).

## IV.

In his twelfth assignment of error, appellant cites numerous instances of prosecutorial misconduct during both stages of

trial which he claims deprived him of a fair and impartial trial. First, we wish to comment on Mr. Macy's assertion during first stage closing argument that, "I wonder if [appellant] was grinning and laughing that night when he murdered Pam Willis." (Tr. IX, 213) Defense counsel's objection was overruled. It is highly improper for a prosecutor to comment on facts not in evidence. *Ward v. State,* 633 P.2d 757, 758–59 (Okla. Crim.App.1981). Mr. Macy's comment was, in the words of Tenth Circuit Judge Seymour, criticizing Mr. Macy for similar tactics, "at best speculation and at worst fantasy." *Bowen v. Maynard,* 799 F.2d 593, 612 (10th Cir.1986), *cert. denied,* 479 U.S. 962, 107 S.Ct. 458, 93 L.Ed.2d 404 (1986).

Second, when defense counsel objected to Mr. Macy stating his personal view that "I want justice, ladies and gentleman, and justice is ... that [appellant] be convicted of murder one." Mr. Macy further responded to the jury that "justice demands his conviction of murder one and it does your Honor," "He killed that girl. He needs to pay for it." It is improper for a prosecutor to express his personal opinion of the guilt of an accused. *Lewis v. State,* 569 P.2d 486, 490 (Okla.Crim.App. 1977). *See ABA Standards for Criminal Justice, The Prosecution Function,* § 3–5.8(b) (1980). Mr. Macy's foregoing argument, and his succeeding statement that "[y]ou told me that you would seek truth and do justice. I am holding you to it and I want justice, I want a murder one conviction, that man sitting right there," improperly informed the jury that it had a responsibility to convict on the basis of the prosecutor's personal sense of justice. *See Rice v. State,* 66 Okla.Crim. 434, 92 P.2d 857, 858–59 (1939). "Jurors who are chosen are there for the purpose of judging the merits of the case with equal justice to the state and to the defendant. Their duty is performed ... when after due and careful consideration they have returned a verdict of guilty or not guilty, as the law and the facts justify." *Id.* 92 P.2d at 859.

Third, Mr. Macy improperly attacked the credibility of defense counsel by accusing him of "making up a story." *See*

*Stout v. State,* 693 P.2d 617, 627 (Okla. Crim.App.1984), *cert. denied,* 472 U.S. 1022, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985). Fourth, Mr. Macy improperly expressed his personal opinion as to the death penalty by stating, "this defendant deserves it ... This is a proper case for the death penalty ... and justice demands it." Such argument was not based on evidence supporting any alleged aggravating circumstance, but was simply a statement of Mr. Macy's personal opinion as to the appropriateness of the death penalty and, as such, was clearly improper. *See Brown v. State,* 753 P.2d 908, 913 (Okla.Crim.App.1988). *See also Brown,* 753 P.2d at 914 (Bussey, J., Specially Concurring). While a prosecutor may draw logical inferences and state his conclusions based on the evidence, it is improper for him to state his personal opinion. *Young v. State,* 695 P.2d 868, 869 (Okla. Crim.App.1985).

Fifth, Mr. Albert criticized the Cleveland County District Attorney's Office for only recommending that appellant get "five years to do" upon entry of a guilty plea to second degree rape, and that "I wish the District Attorney of Cleveland County Oklahoma was sitting here on trial with this Defendant." (Tr. XI, 148) This comment was highly improper, as the Cleveland County District Attorney was not on trial, and the comment could only have been calculated to inflame the passions and prejudices of the jury. *See Jones v. State,* 660 P.2d 634, 645 (Okla.Crim.App. 1983); *ABA Standards for Criminal Justice, supra,* § 3–5.8(c) (1980).

Sixth, Mr. Macy improperly requested sympathy for the victims, urging that "the death penalty is the appropriate punishment that should be done for the right motive, it should be done for love of the victims ... and his future victims...." (Tr. XI, 184) *See Tobler v. State,* 688 P.2d 350, 354 (Okla.Crim.App.1984). Many of the foregoing comments were objected to, some were not. We would emphasize that in spite of defense counsel's obligation to make timely and specific objections to improper arguments, the trial judge has an affirmative obligation "to ensure that final argument to the jury is kept within proper, accepted bounds." *ABA Standards for Criminal Justice, supra,* § 3–5.8(e) (1980). In any event, we are compelled to conclude that the combined effect of the improper prosecutorial comments "was so prejudicial as to adversely affect the fundamental fairness and impartiality of the proceedings." *Freeman v. State,* 681 P.2d 84, 85 (Okla. Crim.App.1984).

V.

The evidence against appellant cannot fairly be termed overwhelming, and we cannot conclude that the multitude of errors was harmless beyond a reasonable doubt. The jury itself experienced some difficulty in reaching a verdict of guilty, as evidenced by the fact that the jury deliberated ten (10) hours and thirty-four (34) minutes without reaching a verdict, and was divided ten to two, when the trial court gave a so-called *Allen* instruction. Shortly thereafter, the jury convicted appellant. (Tr. X, 3–4). This Court will not stand idly by "wring[ing] its hands" expressing nothing more than "a ritualistic verbal spanking" and an "attitude of helpless piety" in denouncing the deplorable conduct of prosecutors such as we have found in this case. *See Darden v. Wainwright,* 477 U.S. 168, 205–206, 106 S.Ct. 2464, 2485, 91 L.Ed.2d 144 (1986) (Blackmun, J., joined by Brennan, J., Marshall, J., and Stevens, J., dissenting). The unprofessional conduct of the prosecutors during closing arguments "should make conscientious prosecutors cringe." *Id.* at 189, 106 S.Ct. at 2476. Oklahoma prosecutors would do well to heed the wise words recited by Justice Douglas in his dissenting opinion in *Donnelly v. DeChristoforo,* 416 U.S. 637, 648–49, 94 S.Ct. 1868, 1874, 40 L.Ed.2d 431 (1974):

The function of the prosecutor under the Federal Constitution is not to tack as many skins of victims as possible to the wall. His function is to vindicate the right of people as expressed in the laws and give those accused of crime a fair trial. As stated by [Justice Sutherland writing for] the Court in *Berger v. Unit-*

*ed States,* 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314:

> 'The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two-fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.'

We have here a state case, not a federal one; and the prosecutor is a state official. But we deal with an aspect of a fair trial which is implicit in the Due Process Clause of the Fourteenth Amendment by which the States are bound. (citations omitted)

As was so aptly stated by Judge Bussey under similar circumstances, "the appellant's right to a fair trial was the victim of an overzealous prosecutor. The record is replete with error committed during both stages of the trial, which when considered in a cumulative fashion, necessitates that the conviction be reversed and remanded for a new trial." *Brewer v. State,* 650 P.2d 54, 57 (Okla.Crim.App.1982).

Accordingly, on the basis of the foregoing, the judgment and sentence is REVERSED and REMANDED for a NEW TRIAL consistent with the views expressed herein.

BRETT, P.J., specially concurs.

BUSSEY, J., dissents.

BRETT, Presiding Judge specially concurring.

I specially concur in this decision for the reason the testimony of Forensic Serologist Gilchrist gave concerning appellant's presence at the scene of the crime was error. She was not there and she exceeded her professional role when she answered the prosecutor's question, as discussed in Part I and Part II in the majority opinion. I am also disturbed by the manner in which the hair samples were provided appellant's expert, John Wilson. Denial of due process is a constitutional deprivation and must not go unnoticed.

I agree also that the prosecutors went far afield in their arguments to the jury. Prosecutors should limit their arguments to the facts provided the jury and should not offer their own opinion concerning guilt of the accused.

In his dissent, Judge Bussey states that the opinion of Gilchrist, concerning appellant's presence at the scene of the crime, falls within 12 O.S.1981, § 2702. That Section of the Statute provides the following:

> Testimony by Experts
>
> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise.

In the subcommittee notes the following dissertation is found:

> Most of the literature assumes that experts testify in the form of opinions. The assumption is logically unfounded. The rule accordingly recognizes that an expert on the stand may give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.

In that respect, I believe Gilchrist exceeded her professional bounds. The ultimate fact for the jury to determine was whether or not appellant was present at the scene of the crime and whether or not he committed the crime. If we continue to allow such personal opinion testimony to be espoused by experts, we may find a requirement imposed upon the courts to provide additional expert assistance to defendants at

State expense to counter such testimony. *See Munson v. State,* 758 P.2d 324, 330 (Okl.Cr.1988), Part I, A.

Therefore, I specially concur in this decision.

BUSSEY, Judge, dissenting:

I must respectfully dissent. While conceding that both defense counsel and the State were dilatory in failing to supply evidence and reports to appellant's expert, I find the present situation similar to that in *Walker v. State,* 723 P.2d 273 (Okl.Cr. 1986) *cert. denied,* 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 600. There, the defense psychiatrist received medical records two days before the trial. Since the doctor had nearly a week to review the records before testifying, we found that the trial court properly overruled defendant's motion for continuance.

In the present case, Wilson had nine days before testifying to analyze the forensic report prepared by Gilchrist. Although he was unable to adequately examine all physical evidence, he did examine some of it. He testified that he took no exception to any of the findings contained in Gilchrist's report. I would find that Wilson had sufficient time to review the forensic report. Based on this and the procrastination of both parties, I would find that appellant was not denied due process.

The opinion testimony of Joyce Gilchrist presented a question of fact for the jury to weigh against her testimony on cross-examination and the testimony of appellant's expert. In *Smith v. State,* 737 P.2d 1206, 1212 (Okl.Cr.1987), we addressed a similar question. There, we held that because of his knowledge, skill, and experience in forensic medicine, a witness was properly qualified to testify as an expert, over a defense objection. On the basis of the color and general appearance of hairs, he suspected that they came from the victim. We found that opinion to be proper, and further noted that even laymen may express opinions rationally based on their perceptions. There was *no error* in *Smith;* neither is there any in this case, where no objection was raised.

The statement of the Southwestern Association of Forensic Scientists provides no basis to reject Gilchrist's opinion. It specifically states, "There is, and should be, no official position of the Association as to what constitutes approved opinion testimony, so long as the expert does not make factual misrepresentations." There was no factual misrepresentation in this case. Gilchrist expressed her opinion, based upon her knowledge, experience, and expertise, that appellant had been present when the murder was committed. Her testimony was properly admitted under 12 O.S.1981, § 2702.

With respect to the hair imbedded in one of the wounds of the victim, the inventory for State's Exhibit No. 4 listed a hair taken from a wound, but it did not specify which wound. Since the hair came from one of the wounds and all wounds were stab wounds, as determined by the autopsy report, the State's theory that appellant was present at the time of the murder could have been postulated on any one of the wounds. Although it was error to permit Gilchrist to testify concerning which wound the hair came from, a fact outside her personal knowledge, the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In regard to the prosecutor's arguments, I note that some of them were based on appellant's conduct at trial, some of them responded to arguments advanced by defense counsel, and many others were not preserved for review by a timely objection. While I do not condone the arguments of the prosecutors in the present case, in light of the totality of the evidence presented at trial, I do not find the statements to be so egregious as to require reversal. *See Brewer v. State,* 718 P.2d 354 (Okl.Cr. 1986).

As I can find no errors in the trial warranting reversal, I must dissent.