Benito Jerome BOWIE, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–87–553.

Court of Criminal Appeals of Oklahoma.

July 15, 1991.

As Corrected Aug. 9, and Oct. 17, 1991.

Rehearing Denied Oct. 17, 1991.

Jamie D. Pybas, Asst. Appellate Public Defender, Norman, for appellant.

Robert H. Henry, State Atty. Gen., and Susan Stewart–Dickerson, Assistant Atty. Gen. Chief, Crim. Div., Oklahoma City, for appellee.

## OPINION

BRETT, Judge:

Appellant, Benito Jerome Bowie, was tried and convicted by a jury for the crime of Murder in the First Degree, in violation of 21 O.S.1981, § 701.7, in Case No. CRF–86–2004, in the District Court of Oklahoma County. The State filed a Bill of Particulars seeking imposition of the death penalty. The jury, however, was unable to unanimously agree on the appropriate punishment, therefore the trial court dismissed the jury and imposed life imprisonment as required by 21 O.S.Supp.1987, § 701.11. From this Judgment and Sentence, appellant has perfected his appeal to this Court.

At trial, several witnesses testified that appellant offered to pay anyone $5,000 to kill the decedent, Melvin Traylor. Appellant offered Gary Fisher $7,000 to find someone to kill Traylor. About ten days before Traylor was killed, appellant contacted Fisher to tell him not to worry about it because he had found a "young punk" to do the job for $5,000. Roger Britt, one of the top men in appellant's organization, gave a gun to a young man, Freddie Ervin. On appellant's orders, on November 19, 1984, Britt took Ervin to his sister's (Cathy Britt) house to "watch her back" while she sold cocaine for appellant. Appellant knew that Traylor would eventually show up at Cathy's house to purchase some cocaine. That night, in the early morning hours of November 20th, Traylor went to the home of Cathy Britt to purchase cocaine. After

Traylor made his purchase, and as he was leaving, he was shot by Ervin, then died a short time later. Ervin testified that appellant paid him five thousand dollars ($5,000) a few weeks later for killing Traylor.

▌ In his first assignment of error, appellant contends that the rebuttal testimony of Detective Pacheco deprived him of a fair trial because the officer gave his opinion as to appellant's guilt. It is the sole and exclusive province of the jury to determine whether the accused is guilty or not, to which a witness may not give an opinion. *McCarty v. State*, 765 P.2d 1215 (Okl.Cr.1988).

In this case, however, the officer, as the State's only rebuttal witness, was not testifying that in his opinion appellant was guilty of murder, as the witness in *McCarty* had done, but rather the reasons for the almost two year delay in filing charges against Mr. Bowie. Part of appellant's case dwelled on the fact that this murder charge was filed against him the day after he was sentenced in federal court on charges arising out of his narcotics organization. Appellant was implying that Oklahoma authorities were upset that he only received eleven years with no parole and therefore filed the murder charge in retaliation. The essence of Detective Pacheco's testimony was that he had been working on the Traylor murder from the beginning and the State did not have sufficient evidence to link appellant with the murder until charges were filed on April 18, 1986.[1] Defense counsel did object, which the court sustained, not because the officer gave an improper opinion, but because his answer was unresponsive to the question. Given the tone of the appellant's case-in-chief, we find that this rebuttal testimony was proper and does not require reversal.

▌ In his second assignment of error, appellant asserts that because the testimony of accomplices Britt and Ervin were not corroborated, his conviction must be reversed. Standing alone, the testimony of an accomplice cannot support a conviction. Title 22 O.S.1981, § 742; *Nunley v. State*, 601 P.2d 459 (Okl.Cr.1979). There must be

---

1. On April 16, 1986, Ervin confessed to shooting Traylor for which he was paid by appellant.

some independent evidence linking appellant to the crime as to a material fact; however, the accomplice's testimony need not be entirely corroborated. *Lister v. State*, 758 P.2d 831, 833 (Okl.Cr.1988). Also, the testimony of one accomplice may not be used to corroborate another. *Cox v. State*, 726 P.2d 909 (Okl.Cr.1986).

The trial court properly found that both Ervin and Britt were accomplices as a matter of law and correctly instructed the jury that they must find their testimony to be corroborated by independent evidence. We find that there was sufficient evidence corroborating the testimony of both Ervin and Britt to convict appellant; several people, other than Ervin and Britt, testified that appellant offered five thousand dollars for the death of Traylor. Gary Fisher testified that just ten days before the murder appellant said he found someone to kill Traylor, and after Traylor was dead, appellant talked about how good it felt to order someone killed. Therefore, reversal is not warranted and this assignment of error must fail.

■ Appellant's third assignment of error is related to his second, but likewise does not require reversal of his conviction. In this assignment, appellant contends that the trial court abused its discretion by failing to submit to the jury the question of whether three of the State's witnesses were accomplices as well. The only instance in which the jury needs to be instructed on this issue is when the question of whether someone is an accomplice is susceptible to alternative findings. *Underwood v. State*, 659 P.2d 948, 954 (Okl.Cr. 1983). As to the three witnesses to which appellant is referring, no evidence was presented that would suggest that these witnesses were involved in the murder of Traylor. All three knew that appellant had offered $5,000 to anyone who would kill the decedent, but none of them acted upon that offer or helped Ervin in furtherance of the crime. Therefore this assignment is denied.

■ In his fourth assignment of error, appellant contends that his fundamental right to a fair trial was violated by the repeated introduction of irrelevant, prejudicial other crimes testimony. The State offered extensive evidence of appellant's illicit drug organization. He concedes that most of the evidence he now complains of was not met with contemporaneous objection at trial and that the State did file notice as required by *Burks v. State*, 594 P.2d 771 (Okl.Cr.1979). Also, a Motion in Limine was filed to limit the other crimes evidence prior to the first trial which was not renewed prior to the second trial. A ruling on that motion by the trial court is not included in the record before this Court. Therefore, we can only review this issue for fundamental error since it has not been properly preserved for appellate review.

The introduction of this evidence does not amount to fundamental error, especially since appellant told the jury himself about his illegal activities. Even though there does not appear to be a close connection between the illegal drug operations and the murder of Traylor, we do not find that appellant was unduly prejudiced by that evidence. Appellant cites *Coates v. State*, 773 P.2d 1281 (Okl.Cr.1989), to support his contention that this is reversible error. However, in *Coates*, the defendant objected to all of the other crimes evidence, the State failed to give adequate notice on some of the evidence, and the defendant did not testify about that other crimes evidence as appellant did in the case at bar. Therefore, though introduction of appellant's drug organization may have been improper, it does not amount to fundamental error that requires reversal.

■ Appellant's fifth assignment of error is related to the fourth in that he claims reversible error because the trial court refused to give his requested instruction limiting the jury's consideration of the other crimes evidence. Normally, refusal to give such an instruction could amount to reversible error; however, we find that the trial court gave an instruction that was substantially the same as that requested by appellant. (Instruction 14 O.R. 249). *See Ross v. State*, 717 P.2d 117, 121 (Okl.Cr.1986). Therefore, the trial court's refusal to instruct the jury with the specific language

in which appellant requested does not require reversal of his conviction. This assignment is denied.

█ In his sixth assignment, appellant complains that prosecutorial misconduct in the closing arguments deprived him of a fair trial. Appellant contends that the prosecutor's extensive argument concerning the other crimes evidence was improper and prejudicial. However, most of the statements appellant complains about were not met with objection at trial. The only statements to which counsel did object, appellant contends were attacks on counsel's integrity. As previously discussed, the introduction of the other crimes evidence was not so prejudicial as to deprive appellant of a fair trial, therefore the prosecutor's comments on the same does not amount to reversible error either. After a review of the statements, we find that they do not require reversal since appellant failed to object and most of the comments were fair inferences from the evidence presented. *See Johnson v. State,* 751 P.2d 196 (Okl.Cr. 1988); *Wachoche v. State,* 644 P.2d 568 (Okl.Cr.1982).

█ Appellant contends in his seventh and supplemental propositions that the State violated the 120 day time limit under the Interstate Agreement on Detainers (IAD) as codified in 22 O.S.1981, § 1347 Art. IV(c), and therefore his conviction should be reversed and dismissed with prejudice. Appellant was initially arraigned in Oklahoma County on August 4, 1986, and all parties agreed that the 120th day would be December 2, 1986. Trial commenced on December 1, 1986, but ended in a mistrial on December 10, 1986, with a hung jury. Rather than return appellant to federal custody, the State retained custody of him in Oklahoma County until his second trial that began on January 23, 1987. After the first trial and prior to the second one, Appellant filed several motions to dismiss claiming that the IAD time limitation was being violated as to him.

Appellant contends in his seventh proposition that the trial did not commence on December 1, 1986, when jury selection began, but rather on December 4, 1986, when the jury was sworn and ready to receive testimony. He claims that therefore the State lost jurisdiction over him for failure to timely prosecute. We do not agree with appellant that the trial had not commenced. Jury selection is an intrinsic part of the trial process. Although jeopardy does not attach until the jury is sworn, we hold that for purposes of the IAD, a trial commences when the jury selection begins.

The purpose of the IAD is "to encourage the expeditious and orderly disposition of" indictments or informations that a prisoner may have outstanding while in the custody of another state. 22 O.S.1981, § 1347 Art I. The mandatory one-hundred-twenty day limit can be extended by the proper tolling of the statute if the State can demonstrate "good cause" for that tolling. *Bell v. State ex rel. Lane,* 714 P.2d 205, 206 (Okl. Cr.1986). We find that in this case, the trial court properly overruled appellant's motions to dismiss; the initial trial did commence within the time limit. The statute does not require that a final verdict be had within that limit, only that the trial commence.

█ In his supplemental brief, appellant contends that the time limitation of the IAD was violated because the State did not achieve a verdict at the first trial. He asserts that because he was not returned to federal custody between trials the State lost jurisdiction to try him the second time, for which he cites *Wilkett v. State,* 753 P.2d 383 (Okl.Cr.1988). In *Wilkett,* the defendant argued that his conviction should have been reversed with prejudice because he was returned to federal custody after two mistrials and was finally convicted at the third trial. This Court upheld his conviction because, each time, the State retried him within 120 days from when they gained custody. Despite appellant's contention, *Wilkett* does not stand for the proposition that the State was required to return appellant to the federal authorities between trials. To so require would defeat the purpose of IAD in insuring that these cases are resolved as quickly as possible.[2] Therefore, this assignment does not require reversal.

2. Appellant's second trial was originally sched-

uled for January 5, 1987. Due to the withdraw-

 On November 30, 1990, this Court granted appellant's request to submit a pro se proposition of error. In this final proposition, appellant contends that he was denied a fair trial because the trial court instructed the jury that Roger Britt was an accomplice to the murder and an immunity agreement between Britt and the State was introduced that seemed to indicate that Britt was not a principal to the crime.

 An accomplice to a crime is a principal to that crime and can likewise be prosecuted. *See* 21 O.S.1981, § 172. As we previously found, the trial court properly held that Britt was an accomplice. We find no inconsistencies between that ruling and the immunity agreement with Britt. Britt was protected from prosecution for the murder of Melvin Traylor by that agreement if he cooperated with the law enforcement officials and "if [he was] not a principal as defined by Oklahoma law...." This agreement does not state that Britt was not, as a matter of law, a principal to the murder; that is a decision only for the trial court to make. The jury was not confused by the trial court's instructions as pertains to Britt's status and the immunity agreement. Therefore, reversal is not required on this issue.

In light of the foregoing, the judgment and sentence is AFFIRMED.

LANE, P.J., specially concurs and files an opinion.

LUMPKIN, V.P.J., concurs.

PARKS, J., specially concurs and files an opinion in which JOHNSON, J., joins.

LANE, Presiding Judge, specially concurring:

In this case, Appellant's trial began on December 1, 1986. The 120 day Interstate Agreement on Detainers (IAD) limit expired December 2, 1986. A mistrial was declared December 10, 1986 and a second trial commenced on January 20, 1987.

I agree with the majority in affirming Appellant's judgment and sentence. I write separately to address Appellant's supplemental proposition of error wherein

Appellant asserts that because he was not returned to federal custody between trials the State lost jurisdiction to bring him to trial the second time, for which he cites *Wilkett v. State*, 753 P.2d 383 (Okl.Cr. 1988).

The majority is correct in its conclusion that *Wilkett* does not hold that Appellant must be returned to federal authorities. However, *Wilkett* does not address the issue of whether the granting of a mistrial tolls the deadline until the next trial if the Appellant is not returned to the federal authorities. This issue has not yet been addressed by this Court.

To resolve this question, I direct the court to Title 22 O.S.1981, § 1347 Art. IV:

(c) In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

When the court declared a mistrial the practical effect was to continue the trial in order that it could be heard by a new jury. This is supported by *Countryman v. State*, 572 P.2d 294, 297 (Okl.Cr.1977) where this Court held that the declaration of a mistrial had the practical effect of granting Appellant's Motion for a Continuance. To hold otherwise would preclude the state from proceeding against the appellant every time a mistrial occurs 120 days after appellant has been taken into custody. Such is clearly contrary to the purpose of 22 O.S. § 1347, *et seq.*

PARKS, Judge, specially concurring:

Although I concur with the outcome of this case, I feel compelled to write separately to further address appellant's proposition of error concerning the Interstate Agreement on Detainers.

First, appellant contends that his trial did not commence within the mandatory 120 day limit set by Art. IV(c) of the Agreement because the jury had not been sworn

al of his counsel after the first trial because of non-payment and the appointment of other counsel, the trial court continued the case, at the re-

quest of appellant, in order to give his new attorney a chance to familiarize himself with the case.

within that period. However, it is well settled law in Oklahoma that for all purposes except attachment of jeopardy, the trial commences when jury selection begins. *Cables v. State*, 3 Okl.Cr. 72, 104 P. 493 (1909); *Simmons v. State*, 4 Okl.Cr. 490, 114 P. 752 (1910). Although the IAD did not exist at the time this general rule was established, I would apply the rule to the Interstate Agreement on Detainers.

Second, appellant contends that the time limitation of the IAD was violated because his first trial resulted in a mistrial and the second trial was not timely. I agree with the majority that *Wilkett* does not stand for the proposition that the state *must* return a defendant to federal custody after each mistrial. To require this would merely waste resources.

It is also important to note that the Interstate Agreement on Detainers does not address the issue of what result must be reached if the detainee's trial ends in a mistrial and the 120 day limitation has since expired. Additionally, it appears that there is no case law on point. Therefore, I feel the interests of justice would be met by holding that where, as here, a mistrial is not attributable to the prosecution and the second proceeding commences as soon as practicable after the first, the Interstate Agreement on Detainers is not violated. Such a holding would allow the State to conserve resources and would assure the defendant a speedy trial.