**Rose BELL, Petitioner,**

v.

**The STATE of Oklahoma, ex rel. the Honorable Donald LANE, Judge of the District Court within and for Tulsa County, State of Oklahoma, Respondent.**

**No. H–85–703.**

Court of Criminal Appeals of Oklahoma.

Jan. 30, 1986.

Kim Richards, Asst. Public Defender, Tulsa, for petitioner.

David Moss, Dist. Atty., William D. Lunn, Asst. Dist. Atty., Tulsa, for respondent.

OPINION

BRETT, Judge:

Petitioner, Rose Bell, has petitioned this Court to issue a Writ of Mandamus to the District Court of Tulsa County in Case No. CRF–84–4716, directing the charges set out in the information be dismissed with prejudice.

The information charges petitioner with five counts of embezzlement. She was incarcerated in Fort Worth, Texas, at a federal facility on a related matter when the Tulsa County District Attorney's Office filed a request she be delivered to Oklahoma for trial on State charges. Interstate Agreement on Detainers Act, 22 O.S.1981, § 1345 et seq. Petitioner arrived in Tulsa on July 3, 1985; she was taken before a magistrate and counsel was appointed on July 5, at which time the preliminary hearing was set for July 18.

On the 18th, over petitioner's objection, the hearing was passed at the State's request to August 29. On the 29th, again over petitioner's objection but at the State's request, the hearing was passed to September 19. The preliminary hearing was commenced on September 19, but was not completed. Instead it was continued, over petitioner's objection and at the State's request, to October 3. On the third the State introduced additional testimony and again asked the hearing be continued to a later date; petitioner objected. The preliminary hearing was resumed on the ninth and tenth and continued again, at the State's request and over petitioner's objection, to October 15. On October 15th the hearing was passed, due to scheduling dif-

ficulties, to Wednesday, October 30 when it was finally completed. Petitioner was bound over to District Court and her arraignment was set for Monday, November 4.

▮ On the fourth, petitioner filed a motion to dismiss and a demurrer to the jurisdiction of the district court citing as authority the Interstate Agreement on Detainers Act, 22 O.S.1981, § 1347, IV(c), V(c). October 31 was the 120th day after petitioner had arrived in Oklahoma. The act mandates in Article IV(c):

> In respect of any proceeding made possible by this article, trial shall be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

Unquestionably the trial had not commenced in the time required.

Although the State contends the time was extended beyond October 31, based on the continuances granted by the court, there is no record the State followed the statutory procedure for requesting the continuances that were granted. 22 O.S.1981, § 584; 12 O.S.1981, § 668. There are no affidavits in the file; apparently, the court granted the continuances on the district attorney's oral representations. Consequently, the record before this Court is not sufficient to support the assertions that the continuances were granted for good cause shown. Certain allegations are made in the briefs and were made at the oral argument but the record does not sustain those allegations. Further, the court minutes are not complete enough to be relied upon. Absent an abuse of discretion, this Court will not reverse a trial court's ruling on a request for continuance. *Roberts v. State*, 571 P.2d 129, 133 (Okl.Cr.1977), cert. denied, 434 U.S. 957, 98 S.Ct. 485, 54 L.Ed.2d 316 (1977). We will not, however, considering the facts of this case, expand that rule to the extent the State advocates. The continuances which were granted without

complying with 12 O.S.1981, § 668 will not be considered as a "necessary or reasonable continuance" thereby extending the limitation prescribed in the act. 22 O.S. 1981, § 1347, Art. IV. *See also Richardson v. State*, 600 P.2d 361 (Okl.Cr.1979). It is clear from the record the Tulsa County District Court lost jurisdiction to try petitioner on October 31, 1985. *See also United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978).

This Court observes that it appears the authorities lost sight of the purpose of the preliminary examination and attempted to convert it into a trial. It should be recalled that the preliminary examination is to establish probable cause sufficient to bind the accused over for trial. To require four months to conduct a preliminary examination appears to be unnecessary under the facts of this case. It should also be made clear that it is presumed the prosecution is in a position to make its case when the detainer is placed on a person incarcerated in another State. In the instant case, such does not appear to be true.

▮ It is this writer's view that the mandatory time limit placed on the detainers can be extended by the proper tolling of the statute, but the record must support the good causes offered for that tolling. The purposes of the Interstate Agreement on Detainers Act are clearly set forth and the courts are expected to fulfill those purposes.

It is the opinion of this Court that the writ of mandamus should be granted and respondent is directed to dismiss, with prejudice, all charges pending in Tulsa County District Court, in Case No. CRF–84–4716, and the mandate shall issue forthwith.

PARKS, P.J., concurs in results.

BUSSEY, J., concurs in part and dissents in part.

PARKS, Presiding Judge, concurring in the result:

The resolution of petitioner's claim requires a careful reading and integration of

all the provisions of the *Interstate Agreement on Detainers Act,* 22 O.S.1981, § 1345 et seq. (hereinafter referred to as The Agreement). Only by reading the Agreement as a whole may its intent be properly discerned. *See In Re Blain,* 197 Okl. 459, 172 P.2d 795 (1946).

The Agreement is a somewhat unusual law. While it is an interstate compact among various jurisdictions, it also is a state statute. As such, it has been subject to widely varying interpretations by courts in the States joined by the compact.

I agree with the U.S. Supreme Court's interpretation of the Agreement in *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978), where the Court said:

> [W]e view Art. IV(c) as requiring commencement of trial within 120 days whenever the receiving State initiates the disposition of charges underlying a detainer it has previously lodged against a state prisoner. Any other reading of this section would allow the Governement to gain the advantages of lodging a detainer against a prisoner without assuming the responsibilities that the Agreement intended to arise from such an action.

*Id.* at 364, 98 S.Ct. at 1849.

In *Mauro,* the United States, although a party to the Agreement, obtained custody of the defendant by virtue of a writ of habeas corpus *ad prosequendum.* Because this process was used, the Government argued that the time limits of the Agreement did not apply. In rejecting this argument, the Supreme Court did not consider, nor did the Government attempt to argue, that the many continuances may have resulted in an extension of the 120 day limit. The Government conceded that if the Agreement was applicable, the limit had been exceeded.

It may seem strange, considering the "good cause" language of art. IV(c), that the Court, in *Mauro,* did not even consider the possibility that the continuances may have resulted in an extension of the 120 day period. This is not surprising, however, when one considers, as did the Supreme Court, the history, purpose and language of the entire Agreement.

According to the Supreme Court, an examination of the history of the Agreement reveals that it was enacted to solve many of the problems which previously had been associated with the use of detainers. Some of these problems were noted in the reports of Congress when the Agreement was under consideration by the Federal Government:

> The Attorney General has advised the committee that a prisoner who has had a detainer lodged against him is seriously disadvantaged by such action. He is in custody and therefore in no position to seek witnesses or to preserve his defense. He must often be kept in close custody and is ineligible for desirable work assignments. What is more, when detainers are filed against a prisoner he sometimes loses interest in institutional opportunities because he must serve his sentence without knowing what additional sentences may lie before him, or when, if ever, he will be in a position to employ the education and skills he may be developing.

H.R.Rep. No. 91–1018, p. 3 (1970); S.Rep. No. 91–1356, p. 3 (1970), U.S. Code Cong. & Admin.News 1970, pp. 4864, 4866.

Moreover, the Agreement itself sets forth its reasons and purposes, and states:

> The party states find that charges outstanding against a prisoner, detainers based on untried indictments, informations or complaints and difficulties in securing speedy trial of persons already incarcerated in other jurisdictions, produce uncertainties which obstruct programs of prisoner treatment and rehabilitation. Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints.

22 O.S.1981, § 1347, art. I. Therefore, in order to avoid both "speedy trial" problems

and a prolonging of the "uncertainties which obstruct programs of prisoner treatment and rehabilitation," the Agreement places strict time limits on a receiving state's right to hold a prisoner without trial. *See* 22 O.S.1981, § 1347, arts. III(c), IV(c). Failure of the State to bring an accused to trial "within the period provided" creates a mandatory obligation on the trial court to dismiss the Information with prejudice. 22 O.S.1981, § 1347, art. V(c). Furthermore, art. IX provides that the Agreement is to "be liberally construed so as to effectuate its purposes." 22 O.S. 1981, § 1347, art. IX.

The drafters of the agreement obviously intended to discourage the indiscriminate filing of detainers. As noted above, the filing of a detainer has many adverse effects on the sending state's administration of its rehabilitation programs. The drafters also sought to discourage a lengthy disruption of a prisoner's term of incarceration. Removing a prisoner from his place of incarceration for an unknown and potentially lengthy period of time obliterates any opportunity for treatment or rehabilitation during that period. And, finally, dilatory prosecutions are directly opposed to an expeditious and orderly disposition of unresolved charges. Title 22 O.S.1981, § 1347, art. V(e) provides clear evidence of the drafter's intent by stating:

> At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state.

Accordingly, I would hold that whenever the State has filed a detainer and requested custody of a prisoner, the State must proceed to bring him to trial within the 120 day period. The State may, for good cause, be granted reasonable and necessary continuances within that period, but in no event shall the continuances extend the commencement of trial beyond the 120 day period.

This interpretation of Article IV(c) is internally consistent with the other provisions of the Agreement. For example, there is one situation in which the Agreement specifically provides for an extension of the time limit, and that is "for as long as the prisoner is unable to stand trial." 22 O.S.1981, § 1347, art. VI(a). The fact that the Agreement specifically provides for an extension in this single situation persuades us that the 120 day time limit is otherwise absolute.[1] Inability to stand trial is only one of several good reasons used by trial judges in continuing trials in our jurisdiction. The fact the drafters chose to single out this lone cause as tolling the time limit implies the same extension is not applicable to any other delays. This is simply an application of the principle that the expression of one option in a statute implies the exclusion of others. *See McCullick v. State*, 682 P.2d 235, 236 (Okl.Cr.1984); *State v. Smith*, 539 P.2d 754, 757 (Okl.Cr. 1975). Furthermore, this strict construction of the statute is consistent with the command of art. V(e) that the prisoner should be returned to the sending state at the earliest practicable time. Providing an absolute 120 day limit guarantees an early return of the prisoner, and encourages the State to commence trial, at the earliest possible time within the 120 day period.

Under this interpretation of the 120 day time limit, the burden on the State is minimal. The State's only obligation is to *commence* trial within the 120 day period. If the State is prepared at the time it requests temporary custody, 120 days is more than enough time for the completion of preliminary proceedings.

BUSSEY, Judge, concurring in part and dissenting in part.

While I agree with Judge Brett that the time limit placed on the detainers may be extended, I am of the opinion that the burden is on the petitioner to demonstrate that the trial court abused its discretion in

---

1. The only other situation in which the time limit might be extended occurs when the accused specifically waives his right to a speedy trial, and requests an extension of the 120 day limit.

granting a continuance and that some prejudice was occasioned thereby. In the instant case, the petitioner wholly failed to demonstrate that the trial court abused its discretion or that he was prejudiced by the extension.