Robert D. GALLIMORE, Jr., Petitioner,

v.

The STATE of Oklahoma,
et al., Respondent.

No. O-97-079.

Court of Criminal Appeals of Oklahoma.

Aug. 26, 1997.

## ORDER GRANTING WRIT OF MANDA-MUS AND DIRECTING DISMISSAL OF CHARGES WITH PREJUDICE

On January 27, 1997, Petitioner, through counsel, filed a "Petition for Extraordinary Writ of Mandamus/Alternative Writ of Prohibition" requesting this Court order the District Court of Ottawa County, the Honorable Sam Fullerton, District Judge, to dismiss, with prejudice, the charges pending against him in Case Nos. CRF–94–129 and CRF–94–133.

On February 27, 1997, this Court entered an order directing either the District Attorney of Ottawa County or the Attorney General of the State of Oklahoma to respond to Petitioner's application. The responding party was specifically requested to address the following question:

Why does the unavailability of a jury docket constitute "good cause" justifying an extension of time to bring a defendant to trial beyond the 120 day time period specified in the Interstate Agreement on Detainers Act?

On March 24, 1997, a response was filed by the Attorney General of the State of Oklahoma. We now address Petitioner's request.

A review of the procedural history of this case is necessary to put in perspective the matter which we consider here. By design, the Interstate Agreement on Detainers Act (IADA) is meant to expedite the trial of charges based on outstanding informations and indictments pending against a defendant in a sister state. Delay in prosecuting a defendant against whom a detainer has been lodged defeats the very purpose of the statute.

Petitioner was arrested on April 13, 1994, in Commerce, Oklahoma, by officers from Oklahoma and Missouri. During the arrest, Petitioner was shot and injured. He was initially taken to a hospital in Miami, Oklahoma, and from there was air-lifted to a hospital in Joplin, Missouri. Petitioner was not returned to Oklahoma after his release from the hospital, but instead was tried and convicted of several felony offenses in Missouri for which he is currently serving time.

The State of Oklahoma first requested Petitioner be returned to Oklahoma on January 2, 1996. That request was initiated by filing the appropriate detainer documents with the Missouri Department of Corrections, pursuant to the IADA, 22 O.S.1991 § 1347, asking that Petitioner be returned to Oklahoma to stand trial in Case Nos. CFR–94–129 [1] and CRF–94–133 [2] in the District Court of Ottawa County. That request, for various reasons, was delayed, and Petitioner was not returned to Oklahoma until June 25, 1996. Pursuant to the IADA, Article IV(c), upon a defendant being returned to the non-custodial state for trial,

"trial *shall* be commenced within one hundred twenty (120) days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." (emphasis added)

In Petitioner's case, trial was to commence on or before October 22, 1996.

The State alleges it was ready to proceed with the prosecution of Petitioner's case upon his return to the State, as well it should have been. The crimes charged were committed in April of 1994 and the State had had two years to prepare. However, even after Petitioner was returned to Oklahoma on June 26, 1996, his case was not set for preliminary hearing until September 11, 1996, and the

---

**1.** Case No. CFR–94–129 charges Petitioner, by way of a Third Amended Information, with Unlawfully Running a Road Block (Counts I and II); Discharging a Firearm With Intent to Kill (Counts III and IV); and Discharging a Firearm From a Vehicle (Count V).

**2.** Case No. CRF–94–133 charges Petitioner, by way of a Third Amended Information, with Trafficking in Amphetamine (Count I); Possession with Intent to Distribute Methylphenidate (Count II); Possession with Intent to Distribute Morphine (Count III); and Possession with Intent to Distribute Oxycodone (Count IV).

record reflects no reason for the delay. On September 5, 1996, the State filed its Second Amended Information. On September 6, 1996, Petitioner filed several motions, including a Motion to Quash, Motion to Dismiss with Prejudice, Motion to Suppress, and a Request for a Speedy Trial.

The preliminary hearing was initially continued until September 18, and continued again until September 25, to allow the State additional time in which to prepare to argue Petitioner's Motions to Quash and Dismiss. It was noted at that time, on the record, by Petitioner's counsel, that the continuation from September 18 to September 25 was allowed over Petitioner's objection.

Petitioner was bound over for trial on September 25, 1996, and his arraignment set for October 3, 1996. The earliest record of hearings in this matter, made available to this Court for review, is the September 25, 1996 hearing. It was at this hearing that the State began requesting an extension of the IADA 120 day time limit, recognizing that absent an extension of time for good cause their IADA statute of limitations would run. It was at this same hearing that the State indicated the next jury docket was set for November 4, 1996. The trial court, the Honorable Martha Sue Thompson, Special Judge, refused the State's request, finding the motion was premature and that she had no jurisdiction to grant such an extension. From the time he was returned to Oklahoma until the time of Petitioner's preliminary hearing, a total of 92 days elapsed.

On October 17, 1996, a hearing was held on the State's request to extend the 120 day time limit. As "good cause" for its request to extend the time limit, the State argued that there was no jury docket in Ottawa County until November of 1996. The State acknowledged at this hearing that it knew there were only 2 jury dockets a year in Ottawa County, and that the next jury docket would not be until November. Moreover, as noted at the hearing by Judge Fullerton, the first jury docket ended in the latter part of May, well before Petitioner was returned to the State for trial. We can only conclude that the State was fully aware that if Petitioner was returned to Oklahoma after the May jury docket concluded, there would be no jury docket available until November of that same year. The District Court granted the State's request, finding the lack of a jury docket constituted good cause.

Petitioner announced his intention to appeal the District Court's ruling, but counsel subsequently withdrew from his representation of Petitioner and new counsel was appointed some time later.[3] On December 23, 1996, Petitioner's motion to dismiss and challenges to jurisdiction, as well as the State's request for an extension of time, were again heard by the District Court. By this time, Petitioner had been appointed new counsel. The District Court's ruling was the same. Petitioner's motions were denied and the State's request for an extension of time due to the unavailability of a jury docket was granted.[4] It is from this ruling that Petitioner now seeks relief.

Petitioner alleges two (2) propositions of error in support of his claim that the charges against him should be dismissed. We find merit in Petitioner's second proposition of error wherein he claims that the State lost jurisdiction to try him for the offenses charged in Case Nos. CF–94–129 and CF–

3. The withdrawal of counsel did not extend the 120 day time limit. At the time of withdrawal, Petitioner's 120 days had already expired and the District Court had granted the State's request for an extension of time.

4. Petitioner testified at this hearing for the limited purpose of indicating the prejudice he had suffered attributable to the State's delay and the detainer placed on him. He indicated that during the time he was awaiting trial several of his key witnesses had disappeared and he was unable to locate them. He also delineated for the District Court the prejudice suffered simply by having a detainer lodged against him. The detainer restricts Petitioner's ability to be considered for reclassification within the Missouri prison system; it limits his ability to appear in front of Missouri's classification and treatment Board (which is responsible for determining what happens to Petitioner inside of the institution in terms of custody, treatment, etc.); it limits Petitioner's appearances in front of the classification Board (he will not be able to appear in front of the Board against until November 1997 because of the detainer lodged by the State of Oklahoma); and the detainer limits his opportunities for institutional rehabilitation, education, training, etc.

94–133 and therefore only address that proposition of error.

There is much about Petitioner's claim which is undisputed. Both Petitioner and the State agree that Petitioner was returned to Oklahoma pursuant to the IADA and should have been tried on or before October 22, 1996. Petitioner was not tried within the statutory time period and the basis for the extension of time granted by the district court was the unavailability of a jury docket. Petitioner has repeatedly renewed his objection to the time extension and has never consented, or waived his right, to be tried within the statutory 120–day time limit. Both Petitioner and the State agree that the provisions of the Act are meant to prevent the government from gaining advantages over a defendant by lodging a detainer against him/her without assuming the responsibilities that accompany such an action. Lastly, it is not disputed that at the time of the request for an extension the State was ready to proceed to trial.

The purpose of the IADA is set forth quite plainly:

> Accordingly, it is the policy of the party states and the purpose of this agreement to encourage the expeditious and orderly disposition of such charges and determination of the proper status of any and all detainers based upon untried indictments, informations or complaints.

22 O.S.1991, § 1347, article I.

In *Bell v. State ex rel. Lane,* 714 P.2d 205 (Okl.Cr.1986) this Court addressed a claim under the IADA wherein the Petitioner alleged extensions of time granted to the State were unreasonable. 22 O.S.1991, § 1347, art. IX. In examining Bell's complaint, this Court determined that the time limits in the IADA were mandatory. The Court did state the time limits could be extended by the proper tolling of the statute. *Id.* at 206. We further determined that the purposes of the Act are clearly set forth and the courts are expected to fulfill those purposes. Article IX of the IADA provides that the Agreement is to be liberally construed so as to effectuate its purpose. 22 O.S.1991, § 1347, art. IX.

This Court has previously determined that failure to bring the appellant to trial pursuant to the IADA within 120 days of arrival into the State's custody requires dismissal of the charges against him/her with prejudice. *Wilkett v. State,* 753 P.2d 383, 386 (Okl.Cr.1988); *Bell,* 714 P.2d at 206. The issue here is whether a situation outside of the control of either the Petitioner or the State (availability of a jury docket) constitutes "good cause" sufficient to toll the statute. We find that it does not.

In addressing the unique situation presented in Petitioner's case, we have found no cases dealing with this particular question, either in our own or other jurisdictions. However, we have found that a number of jurisdictions have construed the time limit provisions of the IADA to require strict compliance on the part of the State.

The IADA provides only 2 exceptions to the speedy trial requirement contained within its provisions. Article III(a) and IV(c) provide that the trial time period is subject to any necessary or reasonable continuance based upon good cause which is shown in open court when the prisoner or his counsel is present. Article VI(a) tolls the time period when the prisoner is unable to stand trial. We are concerned only with the exception provided in Article IV(c), as it is undisputed that Petitioner was available for trial at the time in question.

Continuances under the IADA are unique. The purpose of the statute, stated at Article I, is to encourage the expeditious and orderly disposition of charges and determination of the proper status of any and all detainers based on untried indictments, informations or complaints. 22 O.S.1991, § 1347, art. I. The statute itself provides only one specific exception to the specified time limit and that is the unavailability of the defendant. As the State noted in its brief, the IADA is meant to prevent the government from gaining advantages against a defendant by lodging a detainer against him without assuming the responsibilities arising from that action. *United States v. Mauro,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). The Act is remedial in nature, and, as such, should be liberally construed in fa-

vor of the defendant. *State ex rel Hammett v. McKenzie,* 596 S.W.2d 53, 58 (Mo.App. 1980); *Commonwealth v. Fisher,* 451 Pa. 102, 301 A.2d 605, 607 (1973); *State v. West,* 79 N.J.Super. 379, 191 A.2d 758, 760 n. 1 (1963).

With respect to this particular Act, the State has all of the advantages in terms of deciding when to invoke its provisions. The State determines whether and when to file the detainer; the State decides whether and when to request transfer of the defendant to its jurisdiction; and the State determines the timetable for prosecution, by virtue of its ability to time the request for transfer of the defendant from another jurisdiction. Furthermore, we find nothing in the IADA which would prevent the State from dismissing a detainer and filing it at a later date if, as in this case, the State found it impossible to try a defendant within the time limits specified by the statute.

In support of its position that lack of a jury constitutes "good cause" the State urges this Court to look to the Speedy Trial Act for guidance in determining "good cause", as other states have done (citing to *United States v. Cephas,* 937 F.2d 816, 819 (2nd Cir.1991)). Moreover, the State argues that the facts of each individual case must be examined in deciding whether "good cause" actually exists to delay a hearing pursuant to the IADA. The State cites to numerous cases where the IADA speedy trial provision was tolled for "good cause" due to a variety of reasons, including defective indictments, interim delays, delays by design, and delay by agreement.

■ However, while the guidelines utilized in determining good cause in a speedy trial situation are helpful, we do not find that a defendant summoned to a foreign State pursuant to the IADA claiming delay has the same burden as a defendant claiming delay under the Speedy Trial Act. We find nothing in the IADA which would require a defendant to show prejudice before he/she is entitled to strict construction of the speedy trial provision unique to the IADA. Nor is the

length of the delay particularly relevant as the time limits specified in the IADA are strictly construed. In this particular case there was no waiver of the 120 day speedy trial provision, so the only relevant inquiry here is the cause of the delay.

■ We agree that since there is no hard and fast rule for determining what constitutes "good cause" pursuant to the IADA, the question is one of judicial interpretation under the facts and circumstances of each case. *See also Pickle v. Bliss,* 418 P.2d 69, 73 (Okl.Cr.1966); *Fike v. State,* 388 P.2d 347, 351 (Okl.Cr.1963). Even utilizing the guidelines set forth by the Speedy Trial Act, we still find that lack of a jury fails to meet the "good cause" exception. This Court has previously determined that lack of a jury docket does not constitute "good cause" for failing to provide a defendant with a speedy trial. *See Pickle v. Bliss,* 418 P.2d 69, 75 (Okl.Cr.1966).

In *Pickle* the defendant sought a writ of mandamus directing the district court to dismiss murder charges against him alleging he had been denied his right to a speedy trial pursuant to the 6th Amendment of the United States Constitution, Art.2, § 6 of the Oklahoma Constitution and 22 Okl.St.Ann. § 812. In support of its contention that the case was continued for "good cause" the State alleged (1) there was no attorney available to prosecute the charge in Cherokee County because each was disqualified for good reason; (2) that from the time the second trial was declared a mistrial to the date of the instant hearing there was neither a civil nor criminal jury docket; and (3) there were an insufficient number of defendants available to stand trial at a particular time, the number of which did not justify the setting of the jury docket.[5]

In granting the writ of mandamus and dismissing the charges in *Pickle,* we found that none of the reasons given constituted good cause. This Court reiterated its previous holding that the burden was on the de-

5. 20 O.S.1991 § 96 provides that jury sessions of the district court may be held at any time upon order of a chief judge or of the presiding judge of the judicial administrative district. (emphasis

added.) The fact that the jury docket was not scheduled until November did not prevent the State from requesting that a jury be set to hear this case.

fendant to show laches [6] on the part of the State through its prosecuting officers, (otherwise the presumption is that the delay was caused by or with the consent of the defendant). *Pickle*, 418 P.2d at 72–73; *Payne v. State*, 388 P.2d 331 (Okl.Cr.1963). We found the record supported Petitioner's claim of laches, and refused to find that lack of a jury docket constituted "good cause" for failure to bring Petitioner to trial. We noted:

> And insofar as the second reason [no jury docket] given for good cause is concerned, we fail to find in either the Constitution of the United State, or of the State of Oklahoma, or in the Statutes, any provision which predicates a speedy trial being given, in the event there are enough cases to justify setting a criminal jury docket.

*Pickle*, 418 P.2d at 75. We also noted:

> But if the trial, by reason of the neglect or laches of the prosecution in preparing for it, is delayed beyond such period, when there is a term of court at which it might be had, such delay is a denial to the defendant of his right to a speedy trial.

*Id.*, at 76. (Citing 14 Am.Jur. § 134, p. 859, Criminal Law.) And citing to *State v. Dewey*, 73 Kan. 735, 88 P. 881, 882, quoting the Kansas State Supreme Court, we stated:

> ... [T]erm continuances were ordered by the court for the reasons that there was no jury present. The failure to provide for the attendance of a jury to try causes must, beyond question, be regarded as one of the very things the constitutional guaranty of a speedy trial was designed to meet. *If an exception can be written into the statute so that a delay caused by the neglect of official duty is to be considered as a good excuse for failure to bring the*

> *accused to trial, the constitutional right could be frittered away indefinitely.*

*Pickle*, 418 P.2d at 76 (emphasis added.)

In *In re Gregory*, 309 P.2d 1083 (Okl.Cr. 1957) we determined that lack of funds to call a jury did not constitute good cause for delay in a speedy trial claim. We stated:

> The lack of jury funds is no excuse for such delay in the administration of justice. It has been held in other jurisdictions that the accused is entitled to a dismissal of the cause in cases of excessive delay in providing speedy trial and that the court's failure to provide a jury does not constitute good cause for failing to bring the cause to trial. *State v. Carrillo*, 41 Ariz. 170, 16 P.2d 965; *State v. Brodie*, 7 Wash. 442, 35 P. 137. In *Newlin v. People*, 221 Ill. 166, 77 N.E. 529, 530 construing a statute somewhat similar to ours, it is said:

> 'By the section of the statute in question an absolute right is conferred upon a person charged with crime and committed to and imprisoned in jail, to be set at liberty unless tried within the time limited by that section, except where the circumstances exist which by the provisions of that statute require the court to hold the person for trial. Thus is the constitutional guaranty of a speedy trial made effective. To an application under this statute it is not sufficient for the prosecution to say that it was inconvenient or impossible for the judges of the circuit to hold the term of court at the time fixed by the statute.'

*Gregory*, 309 P.2d at 1087.

■ The purpose of the IADA is to provide for the expeditious disposition of outstanding charges against persons imprisoned in other jurisdictions. The State is correct in alleging that the lack of a jury docket was not caused by any action on the part of the

---

6. *Laches*, as used in the statute fixing the time within which the accused must be tried, consists in the failure on the part of the State to do that which in justice it should do in the prosecution of the accused to afford him a speedy hearing. *Pickle v. Bliss*, 418 P.2d 69, 76 (Okl.Cr.1966). We make no determination here as to whether the State's behavior in this particular matter constituted laches, for two reasons. We do not find it necessary for the defendant subject to a detainer lodged pursuant to the terms of the

IADA to show laches. He need only show that the applicable IADA time limitation has lapsed, and the burden then shifts to the State to show why the charges should not be dismissed. Secondly, whether or not the State's handling of the case constituted unnecessary delay is irrelevant, in this instance. There was no jury docket available until November, so it was impossible for Petitioner to be tried in Ottawa County prior to November 1996 absent specially convening a jury docket to try him.

State's prosecuting officers. However, if the speedy trial period could be tolled by unexplained extensions of continuances simply because the record does not attribute those extensions to the prosecution, the speedy trial provision contained in the IADA, or any other speedy trial provision for that matter, would, in effect, be rendered a nullity. *See Birdwell v. Skeen,* 983 F.2d 1332 (5th Cir. 1993). If the lack of a jury docket constituted good cause, the trial court could fail to reconvene for weeks or even months (depending upon factors used to determine when a jury docket is set or called) and the intervening weeks or months could not properly be considered in calculating time limits to resolve a speedy trial issue.[7]

■ While we sympathize with the prosecution's dilemma, we cannot ignore the mandated time limits specified in the IADA. To do so would be to prejudice the rights of the defendant who is unfortunate enough to be returned to the State for trial in a small county with sporadic jury dockets. This we cannot do. Likewise, we find unpersuasive the State's argument that because the delays in transferring Petitioner to this State from Missouri were beyond its control, it is absolved of responsibility to timely try Petitioner. Surely the State is not suggesting that the delay be attributed to the Petitioner to work to his detriment. While the transfer delay may not have been the State's fault, it has become the State's problem. Unfortunately, neglect of official duty—whether it is failure to timely transfer or failure to convene a jury docket—can not be used to extend the time limitations set forth in the IADA. Nor will this Court allow neglect of official duty by a third party to work to the detriment of a defendant, depriving him of the right to a timely trial. The State invoked

the provisions of the IADA, not the Petitioner, and therefore the State must be strictly bound by its terms.

In *Snow v. Turner,* 406 P.2d 509, 511 (Okl.Cr.1965), we stated that good cause exists when there is some legal reason or delay caused by the operation of the rules of law. We do not find any legal reason or delay caused by operation of the rules of law present in this case. A review of the record in this matter reveals that the State has failed to meet its burden and the charges against Petitioner must therefore be dismissed.

■ A defendant seeking dismissal of charges based upon the State's failure to try him within the statutorily mandated time period specified in the IADA need only show that he was not timely tried and that the delay was not his fault. The burden then shifts to the State to explain why the charges against the defendant should not be dismissed and why the statutory time limit was properly tolled. *See State ex rel. Hammett,* 596 S.W.2d at 59.

We find that the time limitations provided by the IADA should be liberally construed, as is the rest of the act, in favor of the defendant. Lack of, or unavailability of, a jury docket within the time frame specified for trial of a defendant pursuant to the IADA does not constitute good cause for an extension of the 120–day statutorily mandated time frame within which a defendant is to be tried. It is incumbent upon the State, when invoking the IADA, to verify that it is able to timely try the defendant against whom the detainer is being lodged. To find otherwise would be to render useless the time limitations contained within the Act specifically designed to avoid the problem of delay.

---

7. In *State ex rel. Hammett v. McKenzie,* 596 S.W.2d 53 (Mo.App.1980), the Missouri court has gone so far as to state that an overcrowded docket is not, per se, good cause to extend the IADA time period. The Missouri court stated: First, the crowded docket in Franklin County cannot be considered sufficient cause.... If need be, the circuit court must take other cases off the trial docket by taking such actions as granting continuances in criminal cases which are not being prosecuted under the Interstate Agreement on Detainers Act. Similarly, civil

cases should be continued if they are crowding a docket which must entertain a criminal case under the Act. The legislative mandate is clear. *Failure to promptly dispose of out-of-state detainers must take precedence over other causes....* If congestion and delay result from inadequate court staffing or funding, the inevitable results of those delays must fall upon the people, who have the power to remedy court congestion.
*Hammett,* 596 S.W.2d at 58–59 (emphasis added.)

Therefore, we **GRANT** Petitioner's application for writ of mandamus and direct that the charges against him in Case Nos. CRF–94–129 and CRF–94–133, in the District Court of Ottawa County be dismissed, with prejudice.

**IT IS SO ORDERED.**

/s/ Charles S. Chapel
/s/ CHARLES S. CHAPEL,
/s/ Presiding Judge

/s/ Reta M. Strubhar
/s/ RETA M. STRUBHAR,
/s/ Vise Presiding Judge

/s/Charles A. Johnson
/s/ CHARLES A. JOHNSON,
/s/ Judge

LUMPKIN, J., concurs in results.

LANE, J., not participating.

LUMPKIN, Judge, concurring in results:

I concur in the result reached by the Court based on the facts of this case. However, I cannot agree with the dicta contained in the Court's order.